Maria Crimi Speth, #012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association;<br><br>Defendants. | Case No:<br><br>**VERIFIED COMPLAINT** |

10297-14/KAB/JAS/577200_v1

# VERIFIED COMPLAINT

COMES NOW Xcentric Ventures, LLC, an Arizona corporation dba Ripoffreport.Com and Ed Magedson ("Plaintiffs"), through counsel undersigned, and for their Complaint allege and aver that:

## Parties

1. Plaintiff Edward Magedson ("Magedson") is a single man residing in Maricopa County.

2. Magedson is the Manager of Xcentric Ventures, LLC. ("Xcentric").

3. Xcentric is a limited liability company organized under the laws of the State of Arizona.

4. Defendant William "Bill" Stanley ("Stanley") is a person whose residency is unknown and whose conduct as alleged herein was directed towards Arizona with knowledge that his conduct would cause harm in Arizona.

5. Defendant William "Bill" Stanley does business as Defamationaction.com, and Complaintremover.com and uses the aliases Jim Rickson and Matt Johnson.

6. Defendant Robert Russo ("Russo"), is upon information and belief, a resident of the State of Maine whose conduct as alleged herein was directed towards Arizona with knowledge that his conduct would cause harm in Arizona.

7. Defendant Robert Russo does business as Complaintremover.com, Defendmyname.com, and QED Media Group, LLC.

8. Upon information and belief Defendant QED Media Group, L.L.C. is a limited liability company.

9. The state of organization of QED Media Group is unknown.

10. The Defamation Action League is an unincorporated association whose members include Stanley and Russo among others.

11. The Internet Defamation League is an unincorporated association whose members include Stanley and Russo among others.

12. This Complaint alleges violations of Federal Racketeer Influenced And Corrupt Organizations ("RICO") laws, and thus presents a federal question, over which this Court has exclusive jurisdiction pursuant to 28 U.S.C. §1331. The RICO statute expressly grants aggrieved private parties a cause of action in the district courts of the United States. 18 U.S.C. §1964(a), (c).

13. This Court has supplemental jurisdiction of the state law claims alleged in this Complaint under 28 U.S.C. §1367.

14. This action includes a claim for Declaratory Judgment under Rule 57, Federal Rules of Civil Procedure.

15. A substantial part of the events or omissions giving rise to the claims in this Complaint occurred n the District of Arizona. Therefore, venue is proper in the District of Arizona under 28 U.S.C. §1391.

**Facts**

16. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

17. Plaintiff Xcentric operates a consumer information and advocacy website at www.ripoffreport.com ("Rip-off Report/ROR"), where consumers and other visitors to the website can post complaints regarding companies.

18. When a user of the ROR website posts a complaint about a company, the complaint is referred to as a "report."

19. In late 2006 or early 2007, Defendants began emailing and calling Magedson stating that if he did not agree to remove reports on ROR, they would make Magedson's life "hell."

20. Magedson, in accordance with the policy of Xcentric and ROR, refused to remove any reports, and explained that ROR is immune from liability arising from content

3

on the website that was not authored by any agent of Xcentric pursuant to the Communications Decency Act.

21.  Defendants began contacting Prolexic Technologies, a company that provides protection from Distributed Denial of Service ("DDoS") attacks.

22.  On or about January 29, 2007, Defendants began emailing Prolexic, stating that he was writing "on behalf of the Internet Defamation League Membership." The emailed threatened Prolexic that "our membership will be calling and writing you and your upstream on a daily basis soon as you do not seem to want to do anything about this and claim you are only routing him and protecting him from DDOS… In short, we are going to make it as hard for you to do business as ED has made it for us to do business on the Internet. We do not want to hear you are only routing him…I am looking forward to your swift response." Defendants signed the email "William Stanley, Internet Defamation League Membership."

23.  Defendants then followed through on the threats and began incessantly calling Prolexic multiple times a day.

24.  Defendants threatened ROR that if ROR did not remove reports of Defendants' clients, Defendants would do everything in their power to interfere with all of ROR's service providers, such as Prolexic.

25.  Defendants threatened Prolexic that if they did not discontinue providing services to ROR, they would be constantly harassed.

26.  On or about January 30, 2007, Prolexic terminated its contract with Xcentric as a direct and proximate result of the Defendants' threats and harassment.

27.  On or about February 2, 2007, Defendant Stanley wrote to UltraDNS stating that by hosting ROR it is hosting "one of the most notorious and prolific extortionists on the Internet today."

28.  On or about February 2, 2007, Defendant Stanley and Defendant Defamation Action League posted a website called gigenetsucks.com and called for protests and harassment of Gigenet.

4

10297-14/KAB/JAS/577200_v1
Case 2:07-cv-00954-NVW    Document 1    Filed 05/10/2007    Page 4 of 19

29.     On or about February 2, 2007, Defendant Stanley posted on www.defamationaction.com his victory that he got the host to shut ROR down and that as part of the agreement; he cannot name the host that terminated ROR.

30.     On or about February 2, 2007, Defendant Stanley posted information about Sterling Network and TecServ as ISP's that may be hosting ROR.

31.     On or about February 2, 2007, Defendant Stanley publicly invited others to call ROR's ISP "as often as you can."

32.     On or about February 2, 2007, Defendant Stanley bragged on scam.com that they accomplished the "bring down" of two security hosting layers.

33.     On or about February 3, 2007, Defendant Russo threatened Magedson that his members would harass ROR's service providers until reports were removed. This conversation was recorded.

34.     On February 5, 2007, Defendant Stanley called Magedson and threatened harm to him if reports were not removed. Defendant Stanley stated:

> Stanley:    One hour Mother Fucker…I ain't no nice guy mother fucker. I am going to wipe your ass out. You got that? You decide what you wanna do, you can be in business or you can be out of business…. You mother fucker, one fucking hour. If I click on that thing in one hour, and it fucking works, your fucking ass is toast. You got that?
>
> Magedson:   I don't understand, what are you going to do?
>
> Stanley:    I'm gonna call Akamai and 23 hundred other Mother Fuckers are going to the (unintelligible) and they're gonna call Fucking net.net over and over and over again and your going to be fucking toast. And the next host you go to, I'm gonna fuck that host. You are not going to survive this…no fucking way.
> …the only thing you fucking understand is a sledge hammer, you know, you don't understand anything else…
> One fucking hour, Mother Fucker.

5

10297-14/KAB/JAS/577200_v1

35. The conversation referenced above was recorded by Magedson.

36. On or about February 5, 2007 Defendant Russo threatened that he was putting ROR out of business within 48 hours. He also continued to threaten Magedson and told him to "check his mailbox."

37. Magedson ultimately received two threatening letters that state, in part, that his "life is in danger," that he "will soon be beaten to a pulp and pounced into the ground six feet under with a baseball bat and sleg (sic) hammer," and "we will find you kill your dog and remove parts of your body one by one until your site is completely shut down." The authors of these letters maintained they would make good on these threats if Magedson failed to remove specific companies from ROR. Copies of the letters are attached hereto as Exhibit "A."

38. The letters further defamed Magedson and referred to him as a criminal with "criminal dealings."

39. On or about February 6, 2007, Defendants Stanley and Defamation Action League put up a defamation site, http://bryanvincentassociates.com ("BVA"), which stated it is a protest site by the Defamation Action League and condemns BVA for hosting ROR. The site further referred to Magedson as a "scumbag," and "internet extortionist" in addition to stating that he is a "wanted criminal that extorts individuals."

40. Defendants made these statements in both the letter referenced above and on the BVA site knowing that they were false and that they would harm Magedson.

41. The statements by Defendants about Magedson are false, libelous, and defamatory. Magedson is not wanted by the authorities, and, indeed, works with numerous law enforcement officials to provide information for investigations. In addition, neither Magedson nor ROR are "extortionists." ROR provides a service to companies to contact consumers who complain about the company, facilitate resolution of the customer complaints, and update the postings on ROR to reflect the resolution and the company's commitment to customer satisfaction. This is the program that Defendants falsely refer to as "extortion."

6

42. On our about February 6, 2007, Defendant Stanley claimed that he made an agreement with Microsoft for MSN to not carry ROR results in search engines.

43. On or about February 12, 2007, Defendant Stanley announced that Carpathia was providing services to ROR.

44. On or about February 14, 2007, Magedson received another threatening telephone call from Defendant Russo.

45. On or about February 16, 2007, Getnet terminated its business relationship with Xcentric as a direct and proximate result of the threats and harassment by Defendants.

46. On or about February 17, 2007, Defendant Stanley emailed rocksolidcolo network (ISP) and asked it to discontinue providing hosting to ROR.

47. On or about February 17, 2007, Defendant Stanley referred to Akamai as a "deep pocket" and encouraged lawsuits against Akamai.

48. On or about February 17, 2007, the ROR website was not functioning and Magedson received a complaint that he is spamming. Plaintiffs learn that someone had spoofed ROR's email address and sent spam.

49. On or about February 17, 2007, Defendant Stanley bragged that ROR has been removed from Net Access Nac.net, Integra online.com, Akamai Technologies, Sterling Network, Carpathia, Prolexic, Gigenet, BVA Inc., TecServ, Omniseek and Getnet.

50. On or about February 20, 2007, a person using an email address matching Stanley's email address sent spam email to all of Xcentric's customers asking them to stop doing business with Xcentric.

51. On or about February 20, 2007, Defendants Stanley and Defamation Action League posted a website called internapwatch.com which is still posted on the internet which includes statements such as "Internap/Vitalstream Noc acknowledges they have an extortionist and spammers, but refuse to do anything about it. VitalStream added to protests in first escalation. Members start blogs and forums please."

7

52. On or about February 20, 2007, a person using an email address matching Stanley's email address sent spam email to all of Xcentric's advertisers threatening that if they continue to advertise on ROR they will be harassed and negative information will be posted against them on the internet:

> Any companies Advertising and/or supporting Ed Magedson's Extortion Schemes will be subject to PROTEST. We will use protest websites like http://www.internapwatch.com/ We will also post on High ranking Blogs Forums and press release sites. These site and posts will be optimized for maximum effect on search engines.

53. On or about February 22, 2007, Defendants Stanley and Defamation Action League created PMGIsucks.com website against an ROR service provider, which website is still posted on the Internet. The PMGIsucks.com website includes statements such as, "PMGI: Professional Media Group is Partners with Extortionist Rip Off Report Founder Ed Magedson Internet Extortionist. Call and voice your opinion."

54. On or about March 5, 2007, Akamai Technologies terminated its business relationship with ROR stating that it was afraid it would be sued.

55. On or about March 6, 2007, Defendant Stanley posted on defamationaction.com bragging about "constant protest and complaining to ISPs and putting unrelenting pressure" on these providers.

56. On or about March 16, 2007, Defendants Stanley and Defamation Action League posted tiscaliwatch.com and invited harassment of Tiscali for providing hosting services to ROR.

57. On or about May 3, 2007, Plaintiff's counsel had a telephone conversation with Robert Russo wherein she asked him where he could be served with a summons and complaint.

58. On or about May 4, 2007, Defendants Stanley and Defamation Action League posted websites at mariaspeth.com, mariacrimispeth.com and

jaburgwilksucks.com making false and defamatory statements about Plaintiffs' counsel. These websites trace back to QED Media, LLC.

59. All three of these websites include photographs lifted from the official Jaburg & Wilk website. Jaburg & Wilk owns the copyrights to those photographs and has not given Defendants permission and authorization to copy the photographs. The activities of Defendants in copying these photographs constitutes criminal willful copyright infringement for financial gain pursuant to 17 U.S.C. §506.

60. On or about May 4, 2007, Defendants sent the following threatening email to Plaintiff's counsel which email included over 14,000 email addresses of lawyers:

> Here is the deal. We were not doing crap to your beloved ripoff report for the last couple of months. You took that as weakness and fired a shot across our bow. Now we have fired one back. Make no mistake about it. We WILL sink your battleship. This will include postings on each partner in your firm individually with Blogs, Message boards. press releases and emails to a very large list of Phoenix business and national law firms. Your firm will be a laughing stock. If you want we can go back to shutting down your ripoff report again. The reason it is up is because we beat its rank down enough to get links above it. You must be dumb as a rock to you think you can throw your weight around. Did you not get the point last time? Maria I promise you are barking up the wrong tree. As soon as I hear from you that you will stop making threats the sites come down. If you keep barking then we will do what we do best.

61. Since the end of January 2007, Defendants have made hundreds and perhaps thousands of threatening telephone calls to Prolexic, BVA, Getnet, Carpathia, Gigenet, and other service providers who do business with Plaintiff.

62. Defendants have posted hate sites and sent a barrage of threatening emails to various companies and individuals who provide services to ROR – the message always being that if they refuse to serve ROR, Defendants will leave them alone, and if they continue to serve ROR Defendants will put them and their clients out of business.

9

63. Additionally, Defendants' admit that their pattern is to call, spam or otherwise harass ROR's upstream (web service providers who supply bandwidth, hosting, anti-hacking and such) until those service providers refuse to provide services to ROR.

64. Defendant Stanley and/or Russo openly promote their services to "Remove negative information Remove Ripoff Report Remove complaints" which they promote through websites located at complaintremover.com and defendmyname.com. The complaintremover.com and defendmyname.com websites promise to remove negative information from Rip-off Report.

65. Defendants have never removed a Rip-off Report or caused a Rip-off Report to be removed.

66. Defendants' representations on their websites that they remove Rip-off Reports are false representations designed to entice companies to join their membership and fund their scheme to injure and harass Rip-off Report.

## COUNT ONE
(Defamation)

67. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

68. Defendants made false statements regarding Ed Magedson, including statements that he is a wanted criminal and an extortionist.

69. Defendants' words are defamatory because they bring Plaintiff Ed Magedson into disrepute, contempt or ridicule.

70. Defendants are liable not only for what was said, but also for what was insinuated.

71. The statements as made by Defendants were of and concerning Plaintiff.

72. Defendants are liable for presumed damages by reason of their reckless or intentional conduct.

10297-14/KAB/JAS/577200_v1

73. Defendants made each and every defamatory statement concerning Plaintiff knowing that said statements were false; in the alternative, Defendants acted in reckless disregard of the truth in making each of the defamatory statements; in the alternative, Defendants were negligent in failing to ascertain the truth of the defamatory statements before making them.

74. Each and all of the statements made, separately or in conjunction with one another were and continue to be published by the Defendants by reason of evil motives and/or malice towards Plaintiff and were and are intended and designed to and did injure and defame and continue to injure and defame Plaintiff.

75. Defendants' statements, singularly or in combination, have exposed and continue to expose Plaintiff to public contempt. The statements have impeached and continue to impeach the honesty and integrity of the Plaintiff and leave Plaintiff's reputation severely damaged and subject him to ridicule in the eyes of his friends, acquaintances, business associates, and the general public.

76. By reason of the evil motives and malice of the Defendants, Plaintiff prays for punitive damages.

## COUNT TWO
(False light)

77. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

78. The actions and statements of defendants placed Plaintiff Ed Magedson in a false light.

79. The false light in which Plaintiff was placed would be highly offensive to a reasonable person.

80. Defendants knew that the statements and impressions he made were false, or Defendants acted in reckless disregard to the truth or falsity of the statements and implications they made.

81. Plaintiff was damaged by said actions, as above described.

## COUNT THREE
(Declaratory Judgment)

82. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

83. A controversy has arisen between the Plaintiffs and the Defendants as to their respective rights.

84. Based on the facts alleged above, Plaintiffs request that this Court exercise its powers under the Declaratory Judgments Act, 28 U.S.C. §2201-02, to declare that the statements made by Defendants were and are false.

85. It is necessary and appropriate, in order to prevent irreparable injury to Plaintiffs that this Court enter such declaration.

86. Plaintiffs have no adequate remedy at law.

87. To the extent applicable and where authorized by law, Plaintiffs are entitled to attorneys' fees and costs incurred in securing declaratory relief.

## COUNT FOUR
(Conspiracy)

88. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

89. Defendants, and each of them, through a conspiracy, common enterprise and common course of conduct, have wrongfully and through misrepresentations, deprived Plaintiffs of their business relationships and profits stemming from their business activities, as is set forth more fully herein.

## COUNT FIVE
(Wrongful Intentional Interference with Contract)

90. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

12

91. As is set forth more fully herein, Defendants have wrongfully and intentionally interfered with Plaintiffs' contractual relationships and potential contractual relationships with internet service providers, web hosts, internet service companies, advertisers and customers and continue to do so.

92. As is set forth more fully herein, Defendants have wrongfully and intentionally interfered with Plaintiffs' contractual relationships, including, but not limited to, its business relationships with Prolexic, Getnet, Carpathia, and Akamai Technologies.

93. As a direct and proximate result of Defendants' interference, Plaintiffs have been damaged and continue to suffer damages.

## COUNT SIX
(Violation of A.R.S. §13-1804)

94. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

95. Defendants repeatedly called, wrote and emailed Magedson, threatening him with destruction of his business and with physical harm, as set forth in detail above, if he did not comply with Defendants' request to remove businesses and postings from ROR.

96. The activities of Defendants described in this claim were taken intentionally and with full knowledge and appreciation of the intended results of the scheme to extort Plaintiffs.

97. Defendants repeatedly called, wrote and emailed those who do business with Xcentric, and threatened to do damage to their property if those service providers did not concede to their demands.

98. Defendants' actions amount to extortion under A.R.S. §13-1804.

99. Plaintiffs have been injured in their business and reputation by reasons of Defendants' extortionate scheme in an amount to be proven at trial.

10297-14/KAB/JAS/577200_v1

# COUNT SEVEN
(Violation of 18 U.S.C. §1961 et. seq.)

100. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

101. The Defamation Action League is an association of businesses wherein businesses pay to become members and receive benefits of membership.

102. The Defamation Action League is an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c) which is engaged in activities that affect interstate commerce.

103. The Internet Defamation League is an association of businesses wherein businesses pay to become members and receive benefits of membership.

104. The Internet Defamation League is an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c) which is engaged in activities that affect interstate commerce.

105. QED Media, LLC is an "enterprise" within the meaning of 18 U.S.C. §§1961(4) and 1962(c) and is engaged in activities that affected interstate commerce.

106. The members of the Defamation Action League, The Internet Defamation League, and QED Media, LLC, have a common purpose, i.e. preventing the public from learning of complaints about the businesses who are members of or otherwise support these enterprises.

107. The Defamation Action League, The Internet Defamation League, QED Media, LLC, complaintremover.com, and defendmyname.com each have an ongoing structure supported by personnel with continuing functions and duties.

108. The Defamation Action League, The Internet Defamation League, QED Media, LLC, are each an "enterprise" that is distinct from the pattern of racketeering activity in that these entities provide search optimization services to their clients.

109. Defendants Stanley and Russo are "persons" within the meaning of 18 U.S.C. §§1961(3) and 1962(c).

14

110. Defendants Stanley and Russo are and were associated with Defendants Internet Defamation League, Defamation Action League, and QED Media Group, L.L.C. and have control over these enterprises such that they can conduct and participate in the conduct of these named Defendants.

111. Specifically, in January 2007, Defendants began emailing and calling Magedson stating that if he did not agree to remove posts (known as reports) on Rip-off Report, they would make Magedson's life "hell" as alleged herein. The details of the actions of Defendants are described herein.

112. As is set forth herein, Defendants committed extortion as set forth in 18 U.S.C. §1961(1)(A).

113. As set forth herein, Defendants obstructed and affected commerce and the movement of a commodity in commerce, by extortion, attempted extortion and conspiracy to commit extortion as set forth in 18 U.S.C. §1961(1)(B) and 18 U.S.C. §1851.

114. As set forth herein, Defendants, with the intent to extort money or other thing of value, transmitted in interstate commerce communications, containing threats to injure the property and reputation of Plaintiff and Plaintiff's customers, advertisers and service providers in violation of 18 U.S.C. § 875(d).

115. As is set forth herein, Defendants willfully infringed a copyright as set forth in 18 U.S.C. §1961(1)(B) and 17 U.S.C. §506.

116. As is set forth herein, Defendants devised a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and transmitted false information by mail and/or wire in furtherance of that plan in violation of 18 U.S.C. §1341 and/or 1343.

117. The continued actions of Defendants described herein constitute numerous predicate acts sufficient to establish a "pattern of racketeering activity" as that term is defined in 18 U.S.C. §1961(1) and (5).

15

118. The activities of Defendants described in this claim were taken intentionally and with full knowledge and appreciation of the intended results of the scheme to injure and/or destroy Plaintiffs' business.

119. Plaintiffs have been injured in their business and property and reputation by reason of the Defendants' extortionate scheme that comprises the violation of 18 U.S.C. §1962(c) as alleged herein.

120. Plaintiffs have been injured in their property and business as a direct and proximate cause of the racketeering activities of Defendants.

121. The damages in this case shall be determined at trial, plus the costs of this action and attorneys' fees. Plaintiffs are entitled to treble damages.

## COUNT EIGHT
(RICO Conspiracy)

122. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

123. Defendants and other unnamed individuals associated with Defendants have combined, conspired, and agreed to violate 18 U.S.C. §1962(c) by agreeing to conduct an enterprise affecting interstate commerce, directly or indirectly, through a pattern of racketeering activity all in violation of 18 U.S.C. §1962(d). The acts in furtherance of this conspiracy are alleged herein.

124. Plaintiffs have been injured in their business and property by reason of the foregoing violations of 18 U.S.C. §1962(d) as alleged in this claim in an amount to be determined at trial. Plaintiffs are entitled to treble damages.

## COUNT NINE
(Arizona RICO)

125. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

126. Defendants' acts as set forth above were committed for financial gain and were indictable under A.R.S. § 13-2310, Fraudulent Schemes and Artifices, and therefore constitute "racketeering" pursuant to A.R.S. § 13-2301(D)(4).

127. As a direct, proximate and foreseeable result of Defendants' racketeering activity, Plaintiffs have sustained injuries to their property and are entitled to the recovery of treble damages as well as costs and attorneys' fees incurred herein. A.R.S. § 13-2314.04(A).

128. By reason of the violations of A.R.S. § 13-2310 committed by Defendants, Plaintiffs have been damages in an amount to be proven at trial.

## COUNT TEN
(Punitive Damages)

129. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein by this reference.

130. The instant action is an example of the overall systemic pattern of wrongdoing by Defendants.

131. All of the actions alleged herein were taken with substantial disregard of a known risk of harm to the Plaintiffs.

132. Awarding punitive damages to against Defendants is an appropriate remedy for Defendants' actions.


WHEREFORE, Plaintiffs request that this Court enter judgment against the Defendants, and each of them, as follows:

    A.    For injunctive relief enjoining Defendants defaming Plaintiffs and from contacting, harassing, and/or threatening Plaintiffs' business associates or otherwise interfering with Plaintiffs' business.

B. General, special, exemplary and punitive damages in an amount to be established at trial;

C. For treble damages;

D. For declaratory relief as requested;

E. For prejudgment interest on damages stemming from violation of A.R.S. §13-2301 *et seq.*;

F. For attorneys fees pursuant to 18 U.S.C. §1961 and pursuant to state law;

G. For all costs incurred herein; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED this 10th day of May, 2007.

**JABURG & WILK, P.C.**

s/Maria Crimi Speth
Maria Crimi Speth
Attorneys for Plaintiffs

## VERIFICATION

STATE OF ARIZONA ) ss
County of Maricopa )

Ed Magedson, being first duly sworn, deposes and says that he is a Plaintiff in the foregoing Complaint, and Manager of Plaintiff, Xcentric Ventures, LLC d/b/a RIPOFFREPORT.COM, the named Plaintiff in the foregoing Complaint; that he has read the Complaint; that the allegations contained therein are true of his own knowledge except to those matters and things alleged on information and belief and that as to those matters and things, he believes them to be true.

_Ed Magedson_

Sworn and subscribed to before me this 9th day of May, 2007.

"OFFICIAL SEAL"
Matthew R.L. Villegas
Notary Public-Arizona
Maricopa County
My Commission Expires 8/1/2010

_Matthew R. Villegas_
Notary Public

My Commission Expires:

19

10297-14/KAB/JAS/577200_v1