Maria Crimi Speth, #012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC., an Arizona corporation, d/b/a "RIPOFFREPORT.COM;" ED MAGEDSON, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association; <br><br> Defendants. | Case No: <br><br> **PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE AND APPLICATION FOR PRELIMINARY INJUNCTION** |

Plaintiffs Xcentric Ventures, LLC, an Arizona corporation, d/b/a ("Xcentric") and Ed Magedson ("Plaintiff"), through counsel undersigned, hereby respectfully request this Honorable Court to enter an order imposing a temporary restraining order and preliminary injunction against all Defendants who have engaged and are continuing to engage in a five month campaign of Internet terrorism designed to devastate Plaintiff's business by harassing and threatening every company that provides services to Plaintiff until and unless those companies agree to discontinue providing services to Plaintiff. This campaign has, thus far, resulted in multiple internet service providers cancelling contracts with Xcentric and has cost Xcentric over a hundred thousand dollars thus far as well as valuable and long term business relationships.

This motion is brought pursuant to Fed.R.Civ.P. 65(a), and is supported by the Verified Complaint filed concurrently herewith, also as set forth in the following memorandum. A proposed Order for the Court's signature is lodged with this Application.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION/BACKGROUND FACTS

The background facts of this matter are set forth in detail in Plaintiffs' Verified Complaint submitted herewith and are summarized herein to provide the Court with the context for the requested relief.

Ed Magedson ("Magedson") is the Manager of Xcentric Ventures, LLC ("Xcentric"). Xcentric operates a website known as Rip-off Report ("ROR") located at www.ripoffreport.com. It is an extremely popular website where users of the website can both post complaints about businesses and look up a business' track record. In fact, ROR is used by law enforcement, including the FBI, governmental agencies, and the media to

2

10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 2 of 12

1 gather information about patterns of wrongful business practices. (Verified Complaint, ¶ 2, 17, 18)

When a consumer posts a complaint about a business, it is known as a report. Resolved or unresolved, the reports stay in ROR's database. These reports become searchable in various "search engines," and can come to rival, or occasionally even exceed, the businesses' own websites in the various ranking systems used to assign ordinal numbering to the websites by search engines. It is not unusual for ROR to get threatening letters from attorneys for the reported businesses demanding that ROR take down the report(s) for any number of reasons.

However, the operation of an internet web site upon which others post statements and the provision of internet service to others, as here, are activities that are unequivocally protected by the Communications Decency Act, 47 U.S.C. § 230. *Carafano v. Metrosplash.com, Inc.,* 339 F.3d 1119 (9th Cir. 2003); *Zeran v. America Online, Inc.,* 129 F.3d 327 (4th Cir. 1997).

47 U.S.C. § 230 provides "no provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." Operators of interactive web sites have been determined to be covered by this immunity. *Carafano*, 339 F.3d 1119. Internet service providers have also been determined to be covered by this immunity. *Zeran,* 129 F.3d 327 (4th Cir. 1997).

Despite the foregoing, many businesses sue anyway. However, no business has ever succeeded in a lawsuit against Xcentric and every lawsuit that is no longer pending has either been dismissed by the company who brought the lawsuit or dismissed by the court. Xcentric has never paid any amount of money in exchange for dismissal or in settlement and, indeed, many of the companies have paid Xcentric's attorney fees.

While legitimate businesses may get frustrated with complaints against them on ROR, they eventually understand that improving their customer service and posting their side of the story on ROR, which they can do without charge, is the proper way to address

3

10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 3 of 12

1 complaints. Many legitimate businesses have additionally chosen to engage the services of ROR for a fee to contact the authors of the reports, update the reports to reflect the resolution of the complaints and monitor for new reports.

On the other hand, businesses that are a scam have found no way around the negative exposure they receive on ROR. They have been unable to prevent the users of ROR from posting on the website and exposing their fraud and/or pattern of poor business practices.

Enter Defendants William Stanley and Robert Russo. Defendant William "Bill" Stanley ("Stanley") is a well known spammer. (Exhibit "A") In fact, he is listed on the Register of Known Spam Operators as one of the top 200 worst spammers. (Exhibit "A") This site lists Stanley as being out of Texas but he claims to be in Austria. (Exhibit "A") Stanley has been "blacklisted" by Google. (Exhibit "A") Defendant Rob Russo ("Russo") is a partner of Stanley's and they call themselves the Internet Defamation League and the Defamation Action League. (Exhibit "B") Russo is also a principal of QED Media and its website is http://www.qedmediagroup.com. (Exhibit "B")

In or about late 2006, Russo, Stanley, and the Defamation Action League began providing a service called complaintremover.com and defendmyname.com. They falsely claim to remove negative Rip-off Reports. (Exhibit "C") Defendants began contacting disgruntled businesses who were unhappy about being exposed on ROR, again promising results. (Verified Complaint ¶ 19-22) These businesses apparently pay a fee to become members of the Internet Defamation League and/or the Defamation Action League.

In January 2007, Defendants began emailing and calling Magedson stating that if he did not agree in advance to remove certain posts relating to certain businesses, they were going to make his life "hell." (Verified Complaint ¶ 19) Since Magedson is often the subject of such threats, he simply refused to agree to remove any reports, as is his policy.

On January 29, 2007, Stanley wrote to Prolexic, a company that provides protection from Distributed Denial of Service ("DDoS") attacks. (Verified Complaint ¶

4

10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 4 of 12

22) Stanley signed the email "William Stanley, Internet Defamation League Membership" and promised the "our membership will be calling and writing you and your upstream on a daily basis soon as you do not seem to want to do anything about this and claim you are only routing him and protecting him from DDOS…In short, we are going to make it as hard for you to business as ED has made it for us to do business on the Internet. We do not what to hear you are only routing him…I am looking forward to your swift response." (Verified Complaint ¶ 22)

Stanley then followed through on his threats and began calling Prolexic multiple times a day. At that point, undersigned counsel contacted Stanley and Russo and Stanley unequivocally committed extortion during that conversation. He threatened that if ROR did not remove reports of his clients, even true ones, he would do everything in his power to interfere with all of ROR's service providers like Prolexic. (Verified Complaint ¶ 24) On January 30, 2007, in response to the harassment by Defendants, Prolexic terminated a solid business relationship with Xcentric of nearly three years in duration. (Verified Complaint ¶ 26)

On February 3, 2007, Russo threatened Magedson that his members would harass ROR's service providers until reports were removed. This conversation was recorded. (Verified Complaint ¶ 33) Stanley also called and threatened Magedson with physical harm if reports were not removed. This conversation was also recorded, and a partial transcript of this disturbing conversation is set forth in the Verified Complaint. (Verified Complaint ¶ 34)

On February 5, 2007, Russo threatened that he knew that ROR was being hosted by Bryan Vincent Associates ("BVA"). He said he was putting ROR out of business within 48 hours. Russo also told Magedson to check his mailbox. (Verified Complaint ¶ 36) At his neighbor's house, Magedson found two letters which are attached hereto as Exhibit "D." These letters are not only threatening, but frightening as well, and state, in part, that Magedson's "life is in danger," that he "will soon be beaten to a pulp and pounced into the ground six feet under with a baseball bat and sleg (sic) hammer," and "we will find you

5

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

Case 2:07-cv-00954-NVW   Document 2   Filed 05/10/2007   Page 5 of 12

kill your dog and remove parts of your body one by one until your site is completely shut down." The author of these letters maintained he would make good on these threats if Magedson failed to remove specific companies from ROR. (Exhibit "D")

On February 6, 2007, Stanley and/or Russo put up a defamation site as http://www.bryanvicentassociates.com which states it is a protest site by the Defamation Action League and condemns BVA for hosting ROR. The site further refers to Magedson as a "scumbag," and "internet extortionist" in addition to stating that he is a "wanted criminal that extorts individuals." (Verified Complaint ¶ 39)

Then on February 14, 2007, Magedson received another threatening telephone call from Russo. (Verified Complaint ¶ 44)

Since January, 2007 and continuing today, Defendants have harassed and threatened Prolexic, UltraDNS, Tecserv, Sterling Network, Getnet, BVA, Carpathis, Gigenet, Akamai, Rocksolidco, Tiscali and PMGI and have posted hate sites and sent a barrage of threatening emails to these companies. (Verified Complaint ¶ 22, 27, 28, 30, 39, 40, 43, 45, 46, 53, 56) The message is always the same – if they refuse to serve ROR, they will leave them alone, if they continue to serve ROR they will put them and their clients out of business.

In February of 2007, Defendants threatened and harassed businesses who advertise on ROR, including Lifelock, ZoomTalent, Zoommedia, Blind Chalet, and Toy Splash threatening them that if they continue to advertise on ROR, they would be the subject of "protest" sites which would rank high on search engines. (Exhibit "E").

In February of 2007, Defendants spammed hundreds of people who work for companies who do business with Xcentric, including representatives of American Income Life, Chandler Hill, George S. May, O Premium Water, Primerica, and Stores Online and urged them to stop doing business with Plaintiff, and called their payments for services "extortion payments." . (Exhibit "F")

In May of 2007, after learning that legal action was being commenced, Defendants launched attacks on Plaintiffs' law firm, posting hate sites and stating that Plaintiffs'

6

10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW   Document 2   Filed 05/10/2007   Page 6 of 12

kill your dog and remove parts of your body one by one until your site is completely shut down." The author of these letters maintained he would make good on these threats if Magedson failed to remove specific companies from ROR. (Exhibit "D")

On February 6, 2007, Stanley and/or Russo put up a defamation site as http://www.bryanvicentassociates.com which states it is a protest site by the Defamation Action League and condemns BVA for hosting ROR. The site further refers to Magedson as a "scumbag," and "internet extortionist" in addition to stating that he is a "wanted criminal that extorts individuals." (Verified Complaint ¶ 39)

Then on February 14, 2007, Magedson received another threatening telephone call from Russo. (Verified Complaint ¶ 44)

Since January, 2007 and continuing today, Defendants have harassed and threatened Prolexic, UltraDNS, Tecserv, Sterling Network, Getnet, BVA, Carpathis, Gigenet, Akamai, Rocksolidco, Tiscali and PMGI and have posted hate sites and sent a barrage of threatening emails to these companies. (Verified Complaint ¶ 22, 27, 28, 30, 39, 40, 43, 45, 46, 53, 56) The message is always the same – if they refuse to serve ROR, they will leave them alone, if they continue to serve ROR they will put them and their clients out of business.

In February of 2007, Defendants threatened and harassed businesses who advertise on ROR, including Lifelock, ZoomTalent, Zoommedia, Blind Chalet, and Toy Splash threatening them that if they continue to advertise on ROR, they would be the subject of "protest" sites which would rank high on search engines. (Exhibit "E").

In February of 2007, Defendants spammed hundreds of people who work for companies who do business with Xcentric, including representatives of American Income Life, Chandler Hill, George S. May, O Premium Water, Primerica, and Stores Online and urged them to stop doing business with Plaintiff, and called their payments for services "extortion payments." . (Exhibit "F")

In May of 2007, after learning that legal action was being commenced, Defendants launched attacks on Plaintiffs' law firm, posting hate sites and stating that Plaintiffs'

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

attorneys are unethical, extortionists, and "partners in slime" with Plaintiff Magedson. (Exhibit "G"). Defendants sent virtually every attorney in Plaintiffs' firm two emails, one with a link to the website and one threatening: "As soon as I hear from you that you will stop making threats the sites come down. If you keep barking then we will do what we do best." (Exhibit "G")[1].

As a result of the foregoing actions by Defendants, the ROR has been "down" and inaccessible on the internet several times, sometimes for multiple days, and Xcentric has spent over a hundred thousand dollars moving its site from host to host and has suffered severe damage to its reputation. Currently, Xcentric pays an exorbitant monthly premium for its website to remain on the internet. Because the facts clearly demonstrate that Defendants intend to continue this pattern of harassment, Plaintiffs have commenced this action and seek injunctive relief.

## II. NOTICE HAS BEEN GIVEN VIA EMAIL

Pursuant to Rule 65, Fed.R.Civ.P., actual notice has been given to each Defendant via email. Notice has been sent to the same email addresses from which the threatening emails originated. The notice included a copy of the Verified Complaint, Plaintiffs' Application for Temporary Restraining Order with Notice and Application for Preliminary Injunction, and Proposed Temporary Restraining Order.

## III. PRELIMINARY INJUNCTION STANDARDS

Plaintiffs are entitled to injunctive relief under the common law. In determining whether to grant a preliminary injunction in this context, the Court must review the four traditional equitable factors:

1.) a strong likelihood of success on the merits;

2.) the possibility of irreparable injury;

3.) a balance of hardships favors the party seeking the injunction; and

---

[1] Exhibit "G" is an email that is almost three hundred pages long in its entirety and lists over 14,000 email addresses of lawyers. Only the first several pages are attached.

7
10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 7 of 12

4.) public policy favors the injunction.

*See generally Earth Island Institute v. U.S. Forest Service*, 442 F.3d 1147, 1158 (9th Cir. 2006); Triad Sys. *Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1335 (9th Cir.1995); *Johnson Controls v. Phoenix Controls Systems*, 886 F.2d 1173, 1174 (9th Cir. 1989).

## IV. LEGAL ARGUMENT

Here, a review of each factor below compels the conclusion that the injunction sought by Plaintiffs must be issued against Defendants and is proper under Rule 65, F.R.C.P.

### A. Plaintiffs' Will Succeed At Trial On The Merits

Among other things, Plaintiffs' Verified Complaint includes claims of defamation, interference with contractual and business relationships, as well as other rights pertaining to the threat-based extortion of Plaintiffs as well as a Racketeer Influenced & Corrupt Organization Act ("the RICO act") violation.

This is a clear case for an injunction to issue against the Defendants. This is a text book example of intentional interference with business relationships. Defendants' entire scheme and purpose is to interfere with Plaintiffs' business by threatening and harassing anyone who does business with Plaintiffs until they discontinue doing business with Plaintiffs.

Defendants' have blatantly stated that they are going to harass ROR and its service providers until they capitulate, which is sufficient to demonstrate Defendants interference with contractual and business relationships and interference with economic advantage. Clearly, Defendants knew about Plaintiffs' valid business expectancy and contractual relationships with Prolexic and other service providers. Defendants wrongfully interfered with the contracts and the prospective economic advantage by their actions and resulted in the termination of long-standing contracts with ROR. In fact, to date, numerous ROR service providers have cancelled valid, beneficial contracts with ROR, contracts they would otherwise have honored to the mutual benefit of themselves and ROR, due to the

8

10297-14/KAB/JAS/574912_v1
Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 8 of 12

harassment/extortion scheme against the ROR. This interference is actionable and based on the foregoing, easily proved. *Snow v. Western Sav. & Loan Ass'n*, 152 Ariz. 27, 33, 730 P.2d 211 (Ariz. 1986); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 386 88, 710 P.2d 1025, 1041 43 (1985); and *Antwerp Diamond Exchange*, 130 Ariz. at 530, 637 P.2d at 740.

Defendants conduct also constitutes an extortion scheme and a pattern of racketeering. Liability under RICO, 18 U.S.C. §1962(c), requires (1) the conduct (2) of an "enterprise" (3) through a pattern (4) of "racketeering activity." *Sun Savings & Loan Assoc. v. Dierdorff,* 825 F.2d 187, 191 (9th Cir. 1987).[2]

The "racketeering activity" here is alleged to be extortion, wire fraud, criminal copyright violations, and statutory extortion. *Sun Savings & Loan Assoc. v. Dierdorff*, 825 F.2d at 191. The essential elements of wire fraud are (1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme *with the specific intent to defraud*; and (3) the use of the United States wires in furtherance of the fraudulent scheme. *United States v. Hannigan*, 27 F.3d 890, 892 (3rd Cir. 1994); 18 U.S.C. §1341 (emphasis added). Defendants fraudulently represent to the public and to their members that they "remove Ripoff Reports" when in fact they have no authority or capability to do so.

Additionally, Defendants demand that Plaintiffs remove postings/reports from ROR and a failure to do so will result in Defendants continued harassment and threats to service providers is a clear example of extortion. Finally, defendants willfully copied copyright protected photographs from service providers' websites to post on their hate sites.

Here, Defendants have engaged in a pattern of racketeering activity which proximately caused substantial injury to Plaintiffs.

---

[2] This motion addresses the federal and state RICO claims simultaneously since the Arizona RICO statute was modeled after the federal one and its requirements are closely related. *See Tonnemacher v. Sasak,* 859 F.Supp. 1273, 1278-1279 (D. Ariz. 1994).

9
JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

Based on the foregoing, Plaintiffs have clearly shown a probability of success on the merits of their claims. This likelihood is further supported by Defendants' own website where they clearly state they will harass ROR and its suppliers until they put ROR out of business.

Finally, Defendants have committed and continue to commit defamation. In order to prevail on this claim, Plaintiffs must demonstrate that Defendants acted in reckless disregard of the truth in stating and in implying that Magedson is a wanted criminal and internet extortionist. Defendants' actions and writings are defamatory because they tend to bring Magedson into "disrepute, contempt or ridicule." *Central Arizona Light and Power v. Acres*, 45 Ariz. 526, 46 P.2d 126, 131 (1935). Defendants' are liable not only for what was said, but for what was insinuated. *Phoenix Newspaper, Inc. v. Church*, 103 Ariz. 582, 447 P.2d 840, 846 (1968).

The statements made were "of and concerning" both Magedson and ROR. *Hanson v. Stoll*, 130 Ariz. 454, 636 P.2d 1236, 1240 (App. 1981). The statements made are false. Magedson is not "wanted" by the authorities, and indeed, works with the authorities to provide information on corrupt companies. (Verified Complaint ¶ 41). In addition, neither Magedson nor ROR are "extortionists." (Verified Complaint ¶ 41). ROR provides a service to companies to contact consumers who complain about the company, facilitate resolution of the customer complaints, and update the postings on ROR to reflect the resolution and the company's commitment to customer satisfaction. This is the program that Defendants falsely refer to as "extortion." (Verified Complaint ¶ 41). There is simply no evidence to support Defendants statements and Plaintiffs will prevail on this claim.

**B.  Plaintiffs Will Suffer Irreparable Harm Without An Injunction**

Defendants have demonstrated that they intend to continue their wrongful and illegal conduct unless enjoined from doing so. The damage to Plaintiffs' reputation is irreparable. The damage to Plaintiff's business relationships is irreparable. Plaintiff Xcentric cannot continue in business if no company is willing to provide it with hosting,

10

10297-14/KAB/JAS/574912_v1

Case 2:07-cv-00954-NVW    Document 2    Filed 05/10/2007    Page 10 of 12

co-location facilities, bandwidth, and security services to prevent attacks. Defendants have vowed to continue until Xcentric is unable to procure those services anywhere.

Irreparable injury is demonstrated by Defendants' ongoing harassment and extortion scheme resulting in lost or diminished value to ROR due to lost profits, competitive advantage and service interruptions. Plaintiffs' hardship of lost profits, competitive advantage and other benefits far outweighs the hardship of Defendants being enjoined from continuing their illegal activities.

### C. Defendants Will Suffer No Hardship from An Injunction

Little need be said regarding this factor since no hardship could possibly arise from an injunction requiring Defendants to discontinue acting in this manner. The harm to Plaintiffs due to the actions of Defendants is detailed above and clearly egregious. Defendants' have no legitimate interest in continuing to spam, harass, and threaten Plaintiffs and those who do business with Plaintiffs.

## V. CONCLUSION

In summary, the evidence plainly supports the issuance of a temporary and preliminary injunction prohibiting Defendants from continuing their illegal activities. Accordingly, Plaintiffs request that this Honorable Court enter a temporary restraining order enjoining Defendants and their officers, agents, employees, independent contractors, or other persons acting under their supervision and control or at their request from:

1. Making, hosting, or transmitting false or deceptively misleading descriptions, statements or representations concerning Xcentric, Ed Magedson and/or Rip-off Report;

2. Making, hosting, or transmitting false or deceptively misleading descriptions, statements or representations concerning Xcentric's, customers, service providers or advertisers;

11

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

3. Sending or causing to be sent any threatening or harassing communications to Xcentric or Ed Magedson;

4. Sending or causing to be sent any threatening or harassing communications to any company that provides services to Xcentric;

5. Sending or causing to be sent any threatening or harassing communications to any company that advertises or has advertised on Rip-off Report;

6. Sending or causing to be sent any threatening or harassing communications to any customer of Xcentric;

7. Taking any action with the intent to or the result of interfering with Xcentric's business.

Plaintiffs also request an order preventing Defendants from destroying evidence including but not limited to all computer reproduced or saved data pertaining to Xcentric, Magedson, or Rip-off Report.

Finally, Plaintiffs request that the Court set this matter for an evidentiary hearing on the request for a preliminary injunction requiring Defendants to appear and show cause why the Court should not grant such relief.

DATED this 10th day of May, 2007.

**JABURG & WILK, P.C.**

s/Maria Crimi Speth
Maria Crimi Speth
Attorneys for Plaintiffs