Michael K. Dana (State Bar No. 019047)
Teresa K. Anderson (State Bar No. 024919)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Attorneys for Defendants Robert Russo, QED Media Group, L.L.C., and Internet Defamation League, L.L.C.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association,<br><br>Defendants. | Case No. CV07-00954 PHX NVW<br><br>**DECLARATION OF ROBERT RUSSO** |

/ / /

I, Robert Russo, state and declare as follows:

1. I am over 18 years of age and am competent to testify as to the facts stated herein, which are based upon my personal knowledge.

2. I am a resident of Portland Maine and the CEO and owner of QED Media Group, LLC ("QED Media Group") and the Internet Defamation League ("IDL") (collectively, the ("QED Defendants").

3. QED Media Group is an internet service provider with offices in the United States, South America, Canada, the UK, and Central Europe. Defendmyname.com is a brand name for QED Media Group. Defendanmyname.com is not a separate incorporated entity.

4. QED Media Group provides its clients with an array of services, including software design, website design, front office support, internet marketing, and public relations.

5. As part of its public relations services, QED Media Group uses a host of lawful reputation management strategies to protect its clients' reputations from the publication and dissemination of defamatory information about those clients on the internet. QED Media Group's services and strategies are widely used and accepted in the online industry.

6. QED Media Group's reputation management strategies are aimed at removing defamatory information about QED Media Group's clients from the internet or minimizing the ability to access such misinformation through internet searches.

7. Among these strategies, QED Media Group communicates directly with website operators about revising or removing defamatory information. In addition, QED Media Group employs various techniques and technologies that optimize the search engine profiles of its clients by lowering the ranking of search results that contain defamatory content.

/ / /

/ / /

1995178.1

- 2 -

Case 2:07-cv-00954-NVW    Document 16-4    Filed 05/17/2007    Page 2 of 6

8. QED Media Group's reputation management strategies assist clients with combating the destructive impact of defamatory content easily accessible by anyone with an internet connection from anywhere in the world.

9. IDL is a limited liability company I organized and focuses specifically on reputation management strategies to protect the reputations of businesses and people from the publication and dissemination of defamatory information on the internet.

10. IDL is a newly formed company still in its infancy and does not yet have any members.

11. Defendant William Stanley ("Stanley") is not a member of IDL.

12. QED Media gets many of its clients through referral sources. Defendant Stanley is one of many such referral sources.

13. I have never personally met Stanley. Other than the referral agreement between QED Media and Stanley, neither I nor QED Media Group, nor IDL has a relationship, business or otherwise, with Stanley or any other Defendant in this case.

14. QED Media Group receives an inordinate number of requests for services from people and companies who have been defamed by content on Counterdefendant Magedson's website, ripoffreport.com.

15. I have spoken with Magedson twice on the telephone.

16. In or about February 2007, I contacted Magedson on behalf of certain clients regarding certain defamatory ripoffreport.com reports that ranked at or near the top of search engine results.

17. I attempted to negotiate with Magedson about possible options for removing such defamatory reports, or "privatizing" such reports so that they did not appear in web search results.

18. In one of my conversations with Magedson, he became angry and rude, refusing to negotiate reasonably with me.

///

///

19. Because my attempts to negotiate directly with Magedson were unsuccessful, QED Media Group relied on its other reputation management strategies to assist those clients who had become victims of Magedson's defamatory ripoff reports.

20. As a result of QED Media Group's work, the web search engine results for QED Media Group's clients improved, and the rankings of defamatory ripoff reports about those clients fell from the first page of search results.

21. I have never made threats of physical violence against Magedson, his family, his pets, or anyone affiliated with him or his company or website.

22. Neither I, nor QED Media Group, nor IDL has ever engaged in unlawful conduct as part of QED Media Group's reputation management services.

23. I have read the Complaint filed in this case by the Plaintiffs Magedson and his company Xcentric Ventures.

24. That Complaint makes numerous false and defamatory allegations about me, QED Media Group, and IDL.

25. None of the QED Defendants has ever engaged or participated in any of the alleged wrongful conduct attributed to me by Plaintiffs' Complaint.

26. None of the QED Defendants has ever threatened Prolexic or UltraDNS regarding their relationships with Magedson or Xcentric.

27. None of the QED Defendants has ever sent any emails to Magedson or Xcentric.

28. I never told Magedson to "check his mailbox."

29. None of the QED Defendants had anything to do with the anonymous letters attached as Exhibit "A" to Plaintiffs' Complaint.

30. Every service and strategy used by me and QED Media Group to assist clients in their defense against defamatory content on Magedson's ripoffreport.com website has been lawful and appropriate. Most of these strategies are widely used and accepted in my industry.

///

1  ///
2  ///
3      20.    As a result of QED Media Group's work, the web search engine results for
4  QED Media Group's clients improved, and the rankings of defamatory ripoff reports
5  about those clients fell from the first page of search results.
6      21.    I have never made threats of physical violence against Magedson, his
7  family, his pets, or anyone affiliated with him or his company or website.
8      22.    Neither I, nor QED Media Group, nor IDL has ever engaged in unlawful
9  conduct as part of QED Media Group's reputation management services.
10     23.    I have read the Complaint filed in this case by the Plaintiffs Magedson and
11 his company Xcentric Ventures.
12     24.    That Complaint makes numerous false and defamatory allegations about
13 me, QED Media Group, and IDL.
14     25.    None of the QED Defendants has ever engaged or participated in any of
15 the alleged wrongful conduct attributed to me by Plaintiffs' Complaint.
16     26.    None of the QED Defendants has ever threatened Prolexic or UltraDNS
17 regarding their relationships with Magedson or Xcentric.
18     27.    None of the QED Defendants has ever sent any emails to Magedson or
19 Xcentric.
20     28.    I never told Magedson to "check his mailbox."
21     29.    None of the QED Defendants had anything to do with the anonymous
22 letters attached as Exhibit "A" to Plaintiffs' Complaint.
23     30.    Every service and strategy used by me and QED Media Group to assist
24 clients in their defense against defamatory content on Magedson's ripoffreport.com
25 website has been lawful and appropriate. Most of these strategies are widely used and
26 accepted in my industry.
27     31.    None of the QED Defendants participated in any way in the creation or
28 content of websites identified in paragraph 58 of Plaintiffs' Complaint. Plaintiffs'

1995178.1

1 allegations that these websites "trace back to QED Media, LLC" are false.

2 ///

3     32. None of the QED Defendants sent or participated in preparing or sending
4 the email alleged in paragraph 60 of Plaintiffs' Complaint.

5     33. None of the QED Defendants has ever made threatening telephone calls
6 to Prolexic, BVA, Getnet, Carpathia, Gigenet, or any other service provider.

7     34. None of the QED Defendants has ever posted hate sites or sent threatening
8 emails to companies or individuals who provide services to the ripoffreport.com website,
9 as alleged in paragraph 62 of Plaintiffs' Complaint.

11 I declare under penalty of perjury that the foregoing is true and correct.
12 EXECUTED this 17th day of May, 2007.

Robert Russo

1995178.1