Michael K. Dana (State Bar No. 019047)
Teresa K. Anderson (State Bar No. 024919)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Attorneys for Defendants Robert Russo, QED Media Group,
L.L.C., and Internet Defamation League, L.L.C.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association,<br><br>Defendants. | Case No. CV07-00954 PHX NVW<br><br>**DEFENDANTS ROBERT RUSSO's, QED MEDIA GROUP's, L.L.C., AND INTERNET DEFAMATION LEAGUE, L.L.C.'S RESPONSE TO PLAINTIFFS' NOTICE OF LODGING PRELIMINARY INJUNCTION** |

Defendants Robert Russo, QED Media Group, L.L.C., and Internet Defamation League L.L.C. ("The QED Defendants") hereby respond to Plaintiffs' Notice of Lodging

1998219.1

Preliminary Injunction. The QED Defendants object to Plaintiffs' proposed Preliminary Injunction on the grounds set forth below. Plaintiffs submit as an alternative the QED Defendants' proposed Preliminary Injunction attached as Exhibit A.

1. **PLAINTIFFS' PROPOSED ORDER IMPOSES OBLIGATIONS ON THE QED DEFENDANTS THAT SUBSTANTIALLY AND UNFAIRLY DIFFER FROM THE RELIEF ORIGINALLY SOUGHT BY PLAINTIFFS IN THEIR APPLICATION FOR A PRELIMINARY INJUNCTION.**

The QED Defendants and their counsel prepared for the May 17, 2007 preliminary injunction hearing based on the relief requested and the evidence delivered prior to that hearing. Plaintiffs' original Application seeks to collectively enjoin all of the named "Defendants and their officers, agents, employees, independent contractors, or other persons acting under their supervision and control or at their request" from numerous categories of activities set forth in Plaintiffs' original proposed preliminary injunction. (*See* Plaintiffs' May 10, 2007 Preliminary Injunction Application and the proposed "Preliminary Injunction" submitted to the Court at the May 17, 2007 hearing.)

Plaintiffs did not request in their original application a mandatory injunction holding Defendants jointly responsible for affirmatively *removing* information that already exists on the internet. Accordingly, if the relief originally sought by Plaintiffs had been granted as set forth in Plaintiff's proposed injunction, each particular Defendant would be responsible for removing from the internet existing published information controlled by that particular Defendant.

As explained by Robert Russo in his Declaration accompanying this Response, it would be impossible for the QED Defendants to remove the websites identified in Plaintiffs' proposed Preliminary Injunction because none of the QED Defendants own, control, operate, direct the operation of, manage, or have, or have ever had, any affiliation with any of those websites. (*See generally* 5/23/2007 Russo Declaration, Exhibit B.) Indeed, documents delivered by Plaintiffs to the QED Defendants before the hearing appear to clearly establish that Defendant Stanley created the subject websites. The

///

1998219.1

QED Defendants did not instruct or even suggest that Stanley create those sites. (5/23/2007 Russo Declaration at 22-24.)

In effect, the relief requested by Plaintiffs as it pertains to the QED Defendants' involvement in the subject websites has changed from a prohibitory to a mandatory injunction. *See In Re Microsoft Corporation Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003). The showing necessary to obtain a mandatory injunction is higher than that for a prohibitory injunction in that the right to mandatory injunctive relief must be "indisputably clear." *Id.* (internal citation omitted). The evidence presented at the hearing did not make it "indisputably clear" that the QED Defendants are responsible for the subject websites. Indeed, that evidence firmly established that Defendant Stanley controls those sites. Moreover, the Russo Declaration at Exhibit B, which was prepared to address the new exhibits and testimony presented by Plaintiffs at the hearing, refutes Plaintiffs' attempt to tie the QED Defendants to the subject websites.

It would be an unfair violation of the QED Defendants' due process rights to enter a mandatory injunction compelling an impossible action not originally requested by Plaintiffs in their application. Such an injunction would immediately subject the QED Defendants to contempt over which they have no control to avoid.

On the date of this filing (after this Response was nearly complete), Plaintiffs' counsel forwarded an email apparently sent to her by Defendant Stanley on Sunday, May 20, 2007. (*See* forwarded email from Stanley to Speth attached at Exhibit C.) Until reading this email from Plaintiffs' counsel, counsel for the QED Defendants was not aware of the email. Nor were the QED Defendants. (5/23/2007 Russo Declaration, ¶ 30.) This email demonstrates Stanley's apparent intention to openly ignore any orders from the Court. This email further demonstrates the unfairness of requiring the QED Defendants to remove websites that are not only beyond their control, but that are controlled by a party who has stated his intention to openly defy any order to remove them.

///

///

Accordingly, the QED Defendants' proposed preliminary injunction revises the mandatory injunction section to require action only by such Defendants capable of taking such action.

**2. THE PLAINTIFFS' PROPOSED PRELIMINARY INJUNCTION IS FAR TOO BROAD IN ITS RESTRICTION OF ACTIVITY RELATED TO "ROR CUSTOMERS" AND ATTEMPTS TO ENJOIN LAWFUL CONDUCT THAT MAY UNFAIRLY RESTRICT THE QED DEFENDANTS' BUSINESS ACTIVITIES.**

Section 3 of the "Order" portion of Plaintiffs' proposed injunction prohibits various actions involving "ROR Customers." This section does not define exactly what is meant by an "ROR Customer," but Plaintiffs presumably intend to mean any of the users of the ripoffreport.com site who have posted information. Plaintiffs do not have standing to obtain an injunction on behalf of these potentially thousands of unnamed and therefore unknown persons and/or entities. Accordingly, the QED Defendants' proposed preliminary injunction omits Section 3 of the Order portion.

Additionally, paragraph g in Section 3 prohibits the "creating, posting, hosting, or transmitting over the internet any private and/or personal information about a ROR Customer." Such an order would potentially restrict the lawful transmission of such information about persons or entities who may have given permission to do so, and who Defendants may not be aware constitute a "ROR Customers." For this additional reason, paragraph g should be omitted from the injunction.

Paragraph h prohibits "sending spam (unsolicited e-mail) to a ROR Customer." There is nothing unlawful or otherwise wrongful about sending unsolicited e-mails. Moreover, because Plaintiffs conceal the identity of the users of their site, the QED Defendants cannot know whether an email recipient might constitute a "ROR Customer." For this additional reason, paragraph h should be omitted from the injunction.

**3. PLAINTIFFS' PROPOSED PRELIMINARY INJUNCTION SUGGESTS FINDINGS OF FACT THAT WERE NOT PROVEN AT THE PRELIMINARY INJUNCTION HEARING.**

The QED Defendants strongly dispute any involvement in the wrongful actions alleged by Plaintiffs. The QED Defendants are confident that those allegations will be entirely disproved upon a complete presentation of evidence at trial that places the limited

evidence presented by Plaintiffs at the preliminary injunction hearing in its proper context. Nevertheless, the QED Defendants understand that the Court has granted Plaintiffs' Application for a Preliminary Injunction based on the evidence presented at the hearing. The QED Defendants further understand that the Court must make appropriate findings of fact to support the entry of the injunction. In that regard, the QED Defendants suggest the following revisions to the Plaintiffs' proposed findings that more accurately and narrowly reflect findings that may be inferred from the evidence presented. The suggested revisions do not in any way constitute an admission by the QED Defendants to any wrongful conduct, even if the revised finding continue to state or imply that wrongful conduct may have been committed by any of the QED Defendants. Nor does the QED Defendants' decision to not suggest revisions to any other portion of the proposed findings of fact constitute an admission of any wrongful conduct alleged by such unrevised findings:

First, the QED Defendants suggest its revisions to paragraph 18 of the Findings of Fact to limit the finding of purportedly concerted efforts by Defendants Stanley and Russo.

Second, the QED Defendants suggest its revisions to paragraph 19 to find that the joint involvement between Defendants Stanley and Russo is with respect to at least one or more of the alleged actions, as opposed to every alleged action.

Third, the QED Defendants suggest its revisions to paragraph 24 because, as explained in Mr. Russo's May 23, 2007 Declaration, the evidence did not prove that the QED Defendants were involved in the conduct alleged.

Fourth, the QED Defendants suggest that paragraph 25 be omitted because the evidence did not prove bad faith or malice with respect to the QED Defendants and because proving bad faith and malice is not a prerequisite to obtaining the preliminary injunction.

///

///

## 4. CONCLUSION

For the reasons set forth above, the QED Defendants request that the Court's Preliminary Injunction include the revisions contained in the proposed Preliminary Injunction attached as Exhibit A.

If the Court is inclined to enter an injunction that orders the mandatory removal of the subject websites by the QED Defendants, the QED Defendants request that the Court enter the injunction now without such an order and schedule a hearing to permit the QED Defendants to prove their lack of participation in creating those websites and their inability to remove them. Defendant Russo is willing to fly from Maine to Arizona to participate in such a hearing. (*See* 5/23/07 Russo Declaration at ¶ 29.)

DATED this 23rd day of May, 2007.

SNELL & WILMER L.L.P.

By /s/ Michael K. Dana
Michael K. Dana
Teresa K. Anderson
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Attorneys for Defendants Robert Russo, QED Media Group, L.L.C., and Internet Defamation League, L.L.C.

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2007 I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing to the following CM/ECF participant:

Maria Crimi Speth
Jaburg & Wilk
3200 North Central Avenue
Suite 2000
Phoenix, Arizona 85012
Attorneys for Plaintiffs
mcs@jaburgwilk.com

1998219.1

1    I further certify that on May 23, 2007, I served a courtesy copy of the
2    aforementioned document and transmittal of a Notice of Electronic Filing by mail on
3    the following:

> The Honorable Neil V. Wake
> United States District Court
> 401 West Washington Street,
> Phoenix, Arizona 85003

 /s/ E. E. Szafranski

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren
Phoenix, Arizona 85004-2202
(602) 382-6000

1998219.1