# EXHIBIT B

Dockets.Justia.com

Michael K. Dana (State Bar No. 019047) 

Teresa K. Anderson (State Bar No. 024919)

Snell & Wilmer L.L.P.

One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000

Attorneys for Defendants Robert Russo, QED
Media Group, L.L.C., and Internet Defamation
League, L.L.C.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association, <br><br> Defendants. | Case No. CV07-00954 PHX NVW <br><br> **DECLARATION OF ROBERT RUSSO** |

I, Robert Russo, state and declare as follows: 

1. I am over 18 years of age and am competent to testify as to the facts stated herein, which are based upon my personal knowledge.
2. I am a resident of Portland, Maine, and the CEO and owner of QED Media Group, LLC ("QED Media Group") and the Internet Defamation League ("IDL") (collectively, the ("QED Defendants").
3. QED Media Group is an internet service provider with offices in the United States, South America, Canada, the UK, and Central Europe. Defendmyname.com is a brand name for QED Media Group. Defendmyname.com is not a separate incorporated entity.
4. QED Media Group provides its clients with an array of services, including software design, website design, front office support, internet marketing, and public relations.
5. Through web design and other internet services that my company and I have provided during the past twelve years, I personally have acquired extensive experience and knowledge of the internet and how it operates.
6. I have reviewed the proposed preliminary injunction lodged by Plaintiffs on May 21, 2007. I have also reviewed exhibits used by Plaintiffs at the preliminary injunction hearing that Plaintiffs did not deliver to me in advance of the hearing.
7. In particular, I reviewed plaintiffs' Exhibit 37, which Plaintiffs contend constitutes evidence that several recently created websites, such as mariaspeth.com, mariacrimispeth.com, and jaburgwilksucks.com trace back to QED Media Group, LLC.
8. I have also been informed by Counsel as to the testimony presented by Plaintiffs at the hearing in support of this contention.
9. Plaintiffs' assertion that Exhibit 37 proves involvement or affiliation by the QED Defendants with these websites is absolutely false. Indeed, none of the QED Defendants own, control, operate, direct the operation of, manage, or have, or have ever had, any affiliation with any of the websites listed in paragraph 7 above or on pages 12 through 13 of Plaintiffs' proposed Preliminary Injunction lodged with the Court.
10. As indicated by the Whois.Net search results for mariaspeth.com, mariacrimispeth.com, and jaburgwilksucks.com, ns1.xtrasupply.com is listed as the name server IP address for those websites. The IP Address for ns1.xtrasupply.com is 80.109.231.7.
11. None of the QED Defendants own, control, operate, direct the operation of, manage, or have, or have ever had, any affiliation with the name server IP address ns1.xtrasupply.com or the IP address 80.109.231.7.
12. None of the QED Defendants own, control, operate, direct the operation of, manage, or have, or have ever had, any affiliation with the website videowebsites.com, the page at the back of Plaintiffs' Exhibit 37 that appears at the IP address for mariaspeth.com, mariacrimispeth.com, and jaburgwilksucks.com.
13. William Stanley is the registrant for the above websites. As testified in my May 17, 2007 declaration provided in connection with the preliminary injunction hearing that day, Defendant William Stanley is a referral source for QED Media Group.
14. I am aware that William Stanley uses the internet to generate leads for referrals to QED Media Group. William Stanely's website videowebsites.com contains information for "Interactive Video Systems," a copyrighted technology used for web design that is owned by QED Media Group.
15. None of the QED Defendants added or participated in adding the Interactive Video Systems copyrighted information to Stanley's videowebsites.com website. Nor did any of the QED Defendants authorize the inclusion of the Interactive Video Systems information on Stanley's videowebsites.com website.
16. Stanley's videowebsites.com includes three methods of contact as the "best method" to apparently contact a representative of videowebsites.com. None of these methods of contact will reach any QED Defendant or their representatives.
17. It appears that Stanley added the Interactive Video Systems copyrighted information to his website without my authorization to help him generate leads for QED Media Group.

/// 

/// 

18. As I stated in my earlier declaration, I have never personally met Mr. Stanley. The only relationship Mr. Stanley has with the QED Defendants is our referral arrangement.

19. I am aware, however, that Mr. Stanley and I share a common concern on behalf of our respective clients and interests about the proliferation of false and defamatory content on the internet by websites such as the ripoffreport.com.

20. Because of our shared concern about the ripoffreport.com, and because of our existing referral relationship, I have often expressed Mr. Stanley's concerns along with those of the QED Defendants in my communications Plaintiffs. I have also shared with Mr. Stanley information conveyed to me by Plaintiffs and their representatives.

21. I remember a telephone conversation in early May, 2007, with Plaintiffs' counsel, Maria Speth, in which she informed me of Plaintiffs' intent to file a lawsuit. Shortly after that conversation, I informed Mr. Stanley of Plaintiffs' intent.

22. I did not give any instructions or make any suggestions to Mr. Stanley of actions that I believed he should take in response to Plaintiffs' intent to file a lawsuit against us.

23. Mr. Stanley makes his own decisions regarding how to address his own concerns about Plaintiffs' actions, as do numerous ripoffreport.com victims and critics who actively discuss and express their concerns through websites, internet message boards, and internet chat rooms.

24. I had absolutely nothing to do with Mr. Stanley's apparent decision to create the websites mariaspeth.com, mariacrimispeth.com, and jaburgwilksucks.com. Nor do I have any authority or power to remove those websites or any other websites listed in Plaintiffs' newly proposed Preliminary Injunction or to change the content of those sites.

25. My affidavit presented at the May 17, 2007 hearing was based on the exhibits delivered to me and the particular injunctive relief requested by Plaintiffs prior to that hearing.

26. When my counsel called during the May 17, 2007 hearing to inform me that the Court would permit me to testify telephonically to address the new exhibits and testimony presented by Plaintiffs at the hearing, I was not comfortable doing so because I had not seen the exhibits nor heard the testimony. Nor did I have the opportunity to prepare with my counsel to testify.

27. Rather than face cross-examination without any preparation, I authorized my counsel to negotiate a stipulated injunction. I was not concerned about the effect of an injunction that prohibited the illegal conduct alleged by Plaintiffs because I knew that none of the QED Defendants had any interest in engaging in such conduct.

28. However, it would be impossible for the QED Defendants to comply with an injunction that imposed a mandatory obligation to remove or modify the subject websites because, again, the QED Defendants have no control over such websites.

29. I am willing to fly to Arizona from Maine to participate in any hearing that may be necessary to modify the injunction if the Court is inclined to enter an injunction mandating the active removal of those websites by the QED Defendants.

30. On May 23, 2003, my attorney Mike Dana forwarded to me an email that appears to have been sent by Defendant Stanley to Plaintiffs' counsel on May 20, 2007. Prior to receiving that forwarded email from my attorney, I had not seen the May 20, 2007 email from Defendant Stanley to Ms. Speth, nor was I even aware that Mr. Stanley sent such an email. I had absolutely no involvement in the preparation or sending of that email.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this _24th_ day of May, 2007.

Robert Russo