Maria Crimi Speth, #012574
**JABURG & WILK, P.C.**
3200 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 248-1000

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association;<br><br>Defendants. | Case No: 07-954<br><br>**MOTION TO DISMISS COUNTERCLAIMS OF DEFENDANTS ROBERT RUSSO, QED MEDIA GROUP, LLC AND INTERNET DEFAMATION LEAGUE, LLC.** |

ROBERT RUSSO, an individual; QED MEDIA GROUP, L.L.C., a Maine limited liability corporation,

Counterclaimants,

v.

ED MAGEDSON, an individual,

Counterdefendant.

Plaintiff/Counterdefendant Ed Magedson hereby moves this Court for an Order dismissing Counts One and Two of the Counterclaim of Defendants/Counterclaimants Robert Russo and QED Media Group, L.L.C. (collective, "Counterclaimants") pursuant to Fed. R. Civ. P. 12(b)(6). As explained below, Counterclaimants have failed to state a claim upon which relief may be granted as to Counts One and Two.

## I. BACKGROUND

### A. The Verified Complaint

The Court has heard numerous recitations of the facts surrounding these proceedings; therefore, only a brief synopsis of those facts relevant to the parties involved in this particular Motion is necessary. Ed Magedson ("Magedson") is the Manager of Xcentric Ventures, LLC ("Xcentric"). Xcentric operates a website known as Rip-off Report ("ROR") located at www.ripoffreport.com. It is an extremely popular website where users of the website can both post complaints about businesses and look up a business' track record.

In or about late 2006, Defendants Robert Russo, Bill Stanley, and the Defamation Action League began providing a service called complaintremover.com and defendmyname.com. They falsely claim to remove negative Rip-off Reports. Defendants began contacting disgruntled businesses who were unhappy about being exposed on ROR, again promising results. (Verified Complaint ¶ 19-22) These businesses apparently pay a fee to become members of the Internet Defamation League and/or the Defamation Action League.

In January 2007, Defendants began emailing and calling Magedson threatening to make his life "hell." (Verified Complaint ¶ 19) Since Magedson is often the subject of such threats, he simply refused to agree to remove any reports, as is his policy.

On February 3, 2007, Russo threatened Magedson that his members would harass ROR's service providers until reports were removed. This conversation was recorded. (Verified Complaint ¶ 33) Stanley also called and threatened Magedson with physical harm if reports were not removed. This conversation was also recorded, and a partial transcript of this disturbing conversation is set forth in the Verified Complaint. (Verified Complaint ¶ 34)

On February 5, 2007, Russo threatened that he knew that ROR was being hosted by Bryan Vincent Associates ("BVA"). He said he was putting ROR out of business within 48 hours. Russo also told Magedson to check his mailbox. (Verified Complaint ¶ 36) At his neighbor's house, Magedson found two letters which were previously attached to the Verified Complaint as Exhibit "D." These letters are not only threatening, but frightening as well, and state, in part, that Magedson's "life is in danger," that he "will soon be beaten to a pulp and pounced into the ground six feet under with a baseball bat and sleg (sic) hammer," and "we will find you kill your dog and remove parts of your body one by one until your site is completely shut down." The author of these letters maintained he would make good on these threats if Magedson failed to remove specific companies from ROR.

On February 6, 2007, Stanley and/or Russo put up a defamation site as http://www.bryanvicentassociates.com which states it is a protest site by the Defamation Action League and condemns BVA for hosting ROR. The site further refers to Magedson as a "scumbag," and "internet extortionist" in addition to stating that he is a "wanted criminal that extorts individuals." (Verified Complaint ¶ 39) Then on February 14, 2007, Magedson received another threatening telephone call from Russo. (Verified Complaint ¶ 44)

Since January, 2007 and continuing today, Defendants have harassed and threatened a large number of companies that do business with ROR, as well as posted hate

3

10297-1/LAR/MCS/589269_v2

Case 2:07-cv-00954-NVW    Document 28    Filed 06/15/2007    Page 3 of 13

sites and sent a barrage of threatening emails to these companies. (Verified Complaint ¶ 22, 27, 28, 30, 39, 40, 43, 45, 46, 53, 56) The message is always the same – if they refuse to serve ROR, Defendants will leave them alone, if they continue to serve ROR Defendants will put them and their clients out of business.

In February of 2007, Defendants threatened and harassed businesses who advertise on ROR, threatening them that if they continue to advertise on ROR, they would be the subject of "protest" sites which would rank high on search engines.

In February of 2007, Defendants spammed hundreds of people who work for companies who do business with Xcentric and urged them to stop doing business with Plaintiff, and called their payments for services "extortion payments".

In May of 2007, after learning that legal action was being commenced, Defendants launched attacks on Plaintiffs' law firm, posting hate sites and stating that Plaintiffs' attorneys are unethical, extortionists, and "partners in slime" with Magedson. Defendants sent virtually every attorney in Plaintiffs' firm two emails, one with a link to the website and one threatening: "As soon as I hear from you that you will stop making threats the sites come down. If you keep barking then we will do what we do best."

The facts clearly demonstrate that Defendants intend to continue this pattern of harassment. As such, Plaintiffs commenced the above-captioned Action and have sought (and obtained) injunctive relief.

**B.** **The Counterclaim**

On May 17, 2007, in conjunction with their Answer, Defendants Russo and QED Media Group, L.L.C. filed a Counterclaim against Magedson individually. The Counterclaim originally alleged two claims, including one for defamation and one for false light. On June 6, 2007, the First Amended Answer and Counterclaim was filed, adding an additional counterclaim for tortious interference with contract and other business expectancies. In support of their Counterclaim, the Counterclaimants attached two letters containing violent personal threats against Magedson, as well as the entire police report Magedson filed with the Mesa Police Department in conjunction with his

4

receipt of the letters. Taken as a whole, neither the documents nor the first two counts of the Counterclaim sustain a complaint upon which relief may be granted.

## II. LEGAL ARGUMENT

### A. Standard for Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004). The court, however, is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Id.*

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 -1965 (2007); see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), see, *e.g., Swierkiewicz v. Sorema N. A., *534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

Dismissal of defamation suits for failure to state a claim upon which relief may be granted occurs with relative frequency. *See* Wright & Miller, § 1357, at 359 (1990) (A significant exception to the general rule that the complaint will be construed liberally on a

5

10297-1/LAR/MCS/589269_v2

Rule 12(b)(6) motion is when the cause of action is for libel or slander; then, the courts tend to construe the complaint by a somewhat stricter standard).

### B. No Defamatory Statements Are Alleged

For a statement to be actionable, it must be defamatory, which means "any malicious falsehood . . . which tends to bring any person to disrepute, contempt, or ridicule . . . ." *Central Arizona Light and Power v. Acres*, 45 Ariz. 526, 46 P.2d 126, 131 (1935). It must be published to some third person. *Restatement of Torts, Second*, § 577. In addition, the statement must be "of and concerning" the plaintiff. *Restatement of Torts, Second*, § 617(a). The statement must also be provably false. *Broking v. Phoenix Newspapers, Inc.*, 76 Ariz. 334, 264 P.2d 413, 416 (1953). The plaintiff must prove that the defendant acted with some degree of "fault" and, in the case of a private individual with no privileged occasion involved, the degree of fault is simple negligence. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 560 P.2d 1216 (1977). Finally, the statement, to be actionable, must cause damages.

    1.    <u>Magedson's statements to the Mesa Police are not actionable.</u>

Statements made to the police in the reporting of a crime are absolutely privileged. *Ledvina v. Cerasani*, 213 Ariz. 569, 574, 146 P.3d 70, 75 (Ariz.App. Div. 2, 2006). Although the narration provided by Counterclaimants about Magedson's reporting to the Mesa Police Department is relatively accurate, it is also irrelevant for the purposes of a defamation claim. "The collateral litigation of defamation claims arising from crime victims' reports to police would contravene th[e] [Victim's Bill of Rights] and thereby vitiate Arizona's stated public policy." *Id.* Magedson cannot be liable for any reports made to the Mesa Police Department.

    2.    <u>The Complaint fails to identify any actionable defamatory statements.</u>

With respect to parties to court proceedings such as Magedson, the RESTATEMENT (SECOND) OF TORTS (1977) describes the absolute judicial privilege as follows:

> A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial

6

10297-1/LAR/MCS/589269_v2

Case 2:07-cv-00954-NVW    Document 28    Filed 06/15/2007    Page 6 of 13

> proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

RESTATEMENT (SECOND) TORTS § 587; *see also Hall v. Smith*, 152 P.3d 1192, 1195 - 1196 (Ariz.App. Div. 2,2007); *Johnson v. McDonald*, 197 Ariz. 155, ¶ 12, 3 P.3d 1075, 1078 (App.1999). The privilege applies to both attorneys and parties to litigation. *See Green Acres Trust v. London*, 141 Ariz. 609, 613, 688 P.2d 617, 621 (1984); Restatement §§ 586, 587. And, "[t]he defense is absolute in that the speaker's motive, purpose or reasonableness in uttering a false statement do not affect the defense." *Green Acres*, 141 Ariz. at 613, 688 P.2d at 621; *see also Sobol*, 212 Ariz. 315, ¶ 11, 131 P.3d at 490. The purpose of the privilege is to ensure "the fearless prosecution and defense of claims which leads to complete exposure of pertinent information for a tribunal's disposition." *Green Acres*, 141 Ariz. at 613, 688 P.2d at 621; *see also Krouse v. Bower*, 20 P.3d 895, 900 (Utah 2001). Counterclaimants' assertion that Magedon continued a "scheme" by repeating "defamatory accusations" in his Complaint are also irrelevant for purposes of any defamation claims against Magedson.

3. <u>Counterclaimants remaining allegations of defamation are inadequate.</u>

For Counterclaimaints to survive this Motion to Dismiss, they must not only establish that the statements about which they complain are "reasonably capable of sustaining a defamatory meaning," *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1121 (C.D.Cal.1998), *aff'd and reasoning adopted*, 210 F.3d 1036, 1038 (9th Cir.2000), they must also show that they are not mere "comment within the ambit of the First Amendment." *Id.* This Court can resolve both questions as a matter of law. *Id.* at 1120; *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065-68 (9th Cir.1998) (dismissing action for failure to state a claim because statements were non-actionable opinion); *Dworkin v. Hustler Magazine, Inc.*, 668 F.Supp. 1408, 1415 (C.D.Cal.1987) ("It is for the court to decide [whether a statement is actionable defamation] in the first instance as a matter of law."), aff'd, 867 F.2d 1188, 1193-94 (9th Cir.1989).

7

10297-1/LAR/MCS/589269_v2

In the Counterclaim, Counterclaimants make vague accusations about statements Magedson allegedly made to "numerous members of the professional media". (Counterclaim, ¶ 33). Despite this rather strong charge, Counterclaimants are unable to specify what statements, were made to whom nor whether any are false. Instead, Counterclaimants attempt to circumvent this requirement by referencing "false suggestions," none of which are identified or articulated by Counterclaimants.

Counterclaimants further attempt to hold Magedson liable for fictitious statements made by asserting that he has publicized statements "in many forums." (Counterclaim, ¶ 42) Although Counterclaimants do attempt to specify what these "forums" are, merely identifying the *type* of forum does not mitigate the responsibility of Counterclaimants to identify the *location* of the forums and *content* of the statements.[1]

Counterclaimants also assert the existence of a web page announcing the lawsuit, without providing the Court or Magedson with either the location of such a web page or even a copy of the web page. (Counterclaim, ¶ 53)

A claim for defamation cannot be premised entirely on inadmissible hearsay. *See Wallace v. Casa Grande Union High School Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 425, 909 P.2d 486, 492 (Ariz.App. Div. 2,1995). Without documentation or admissible evidence as to the content of Magedson's alleged statements, a claim for defamation cannot withstand a Motion to Dismiss.

As noted by one of the leading authorities on the subject of defamation, "[d]ismissal of defamation suits for failure of the complaint to state a cause of action or state a claim upon which relief may be granted occurs with relative frequency. " Robert D. Sack, *Sack on Defamation* § 16.2.1 (3d ed. 1999). In fact, unlike most litigation, in a libel suit the allegedly defamatory communication is the central event and therefore it can be literally put before the judge at the pleading stage, and may be assessed upon a motion to dismiss, firsthand and in context. Indeed, many jurisdictions require that the complaint

---

[1] Counterclaimants allege that "[o]n information and belief, Magedson wrote the letters attached as Exhibit [A] himself as part of his scheme to defame the reputations of Russo and QED Media Group." (Counterclaim, ¶ 33). Not only is this statement patently false, Counterclaimants had no foundation to make such a statement.

8

10297-1/LAR/MCS/589269_v2

itself provide the exact statement which is the basis for the cause of action. *See* N.Y. C.P.L.R § 3016(a) (New York requires "the particular words complained of ... be set forth in the complaint"); *Arsenault v. Forquer*, 197 AD.2d 554 (N.Y.App. 1993) (holding complaint in defamation case must also allege the time, place, and manner of the false statement and specify to whom it was made). Arizona has not addressed whether the exact statement must be provided; however, the analysis of other courts requiring such an inclusion in the complaint is compelling in light of the tension between defamation claims and the First Amendment.

Rule 8(a), Federal Rules of Civil Procedure sets forth a notice pleading requirement that requires the complainant to, at a minimum, inform the defendant what charges are being alleged against him. Magedson is entitled to fair notice of the claims against him to such an extent that he would be able to provide a response. In reading the plain language of the counterclaim, it is simply impossible to understand what it is that counterclaimants allege was defamatory. Supplying this information is crucial in the context of a claim for defamation; at a minimum the pleading should provide notice of what was said, and who published each statement. *See Phantom Touring, Inc. v. Affiliated Publ' ns*, 953 F.2d 724, 728 n.6 (1st Cir. 1992) ("[A] defendant is entitled to knowledge of the precise language challenged as defamatory and the plaintiff is therefore limited to its complaint in defining the scope of the alleged defamation."); *Goldstein v. Kinney Shoe Corp.*, 931 F.Supp. 595 (N.D.Ill.1996) (Federal pleading standards generally require a plaintiff pleading a state law defamation claim to recite the specific words alleged to be defamatory; purpose of requiring in hac verba pleading is to enable defendant to responsively plead); *see also Lipsig v. Ramlawi*, 760 So.2d 170, 184 (Fl.App. 2000) ("[T]he general rule in Florida is that allegedly defamatory words should be set out in the complaint for the purpose of fixing the character of the alleged libelous publication as being libel[ous] per se."). Without the knowledge of what statements are defamatory, no response and/or defense can be asserted by Magedson and it cannot be said that Magedson has received "fair notice" of those claims against him. *See generally Pierce v.*

9

10297-1/LAR/MCS/589269_v2

Case 2:07-cv-00954-NVW   Document 28   Filed 06/15/2007   Page 9 of 13

*Montgomery County Opportunity Bd., Inc.*, 884 F.Supp. 965 (E.D.Pa.1995); *Mallett v. Timco Elec. Power and Controls, Inc.*, 815 F.Supp. 992 (E.D.Tex.1993); *Dimuccio v. D'Ambra*, 779 F.Supp. 1318 (M.D.Fla.1991).

### C. No Claim For False Light Exists

Although defamation and false light often overlap, they serve very different objectives. *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (Ariz.,1989). The two tort actions deter different conduct and redress different wrongs. A party may bring a false light invasion of privacy action even though the publication is not defamatory, and even though the actual facts stated are true. Even though both defamation and false light invasion of privacy involve publication, the nature of the interests protected by each action differs substantially. See PROSSER & KEETON § 117, at 864. To prevail on a claim for false light, Counterclaimants must prove that something untrue has been published about them or that the publication or if the publication is true that it creates a false implication about the Counterclaimants. *Godhehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989). The *Restatement* similarly describes false light invasion of privacy claims as follows:

> One who gives publicity to a matter concerning another that places the other in a false light is subject to liability to the other for the invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as the falsity of the publicized matter and the false light in which the other would be placed.

Restatement (Second) of Torts § 652E. Counterclaimants have not alleged facts showing that Magedson placed them in a false light, that the false light in which they were portrayed would be highly offensive to a reasonable person, and that Magedson had knowledge of or acted in reckless disregard of the falsity of the matter and the false light in which they were portrayed. *Hart v. Seven Resorts, Inc.*, 190 Ariz. 272, 947 p.2d 846 (App.1997)(quoting Restatement §652(E)). In an action for false light, the Counterclaimants' subjective threshold of sensibility is not the measure, and "trivial

10

10297-1/LAR/MCS/589269_v2

Case 2:07-cv-00954-NVW   Document 28   Filed 06/15/2007   Page 10 of 13

indignities" are not actionable. Thus, the tort action for false light provides protection against a narrow class of wrongful conduct that falls short of "outrage".

False light does not protect reputation but protects mental and emotional interests. The wrongs redressed by a claim for false light must be considered as a direct rather than an indirect injury and one that is wholly personal in character, not depending on any effect which the publication may have on the standing of the individual in the community. *Reed v. Real Detective Pub. Co.*, 63 Ariz. 294, 306, 162 P.2d 133, 139 (Ariz.1945). Indeed, "[t]he gravamen of [a privacy] action ... is the injury to the feelings of the plaintiff, the mental anguish and distress caused by the publication." *Id.*, 63 Ariz. at 305, 162 P.2d at 139. The remedy is available "to protect a person's interest in being let alone and is available when there has been publicity of a kind that is highly offensive." PROSSER & KEETON § 117, at 864. To qualify as a false light, the publication must involve "a major misrepresentation of [the Counterclaimants'] character, history, activities or beliefs," not merely minor or unimportant inaccuracies. Restatement § 652E comment c.

The allegations in the Counterclaim are insufficient to support a claim of false light. *See Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781, 786 (1989). The allegations in the Counterclaim also do not support the general rule that a claim for false light requires "publicity." See, *Restatement of Torts (2nd)* § 652D ("one who gives publicity to a matter concerning a private life of another is subject to liability to the other for invasion of his privacy.").

……

….

…

11

10297-1/LAR/MCS/589269_v2

## III. CONCLUSION

As demonstrated above, Counterclaimants have failed to state a claim for either defamation or false light, and therefore the Counts One and Two of the First Amended Counterclaim must be dismissed in their entirety. Similarly, as also demonstrated above, no material facts remain as to Count Three of the First Amended Counterclaim, and judgment must be entered against Counterclaimants as a matter of law.

DATED this 15th day of June, 2007

JABURG & WILK, P.C.

s/ Maria Crimi Speth
Maria Crimi Speth
Attorneys for Plaintiffs

### Certificate of Service

I hereby certify that on June 15, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Teresa Kay Anderson
Snell & Wilmer LLP
One Arizona Center
400 E Van Buren
Phoenix, AZ 85004

Michael Kent Dana
Snell & Wilmer LLP
400 E Van Buren
Phoenix, AZ 85004-0001

Attorneys for Defendants Robert Russo, QED Media Group, LLC and Internet Defamation League

With a COPY of the foregoing emailed on the 15th day of June, 2007, to:

William "Bill" Stanley
defamationaction@gmail.com
geographicalseo@gmail.com

With a COPY of the foregoing hand delivered on the 15th day of June, 2007, to:

Honorable Neil V Wake
United States District Court
District of Arizona

s/Debra Gower