1 **WO**

2
3
4
5

6                    IN THE UNITED STATES DISTRICT COURT
7                            FOR THE DISTRICT OF ARIZONA
8

9  | XCENTRIC VENTURES, LLC, an) | No. CV-07-00954-PHX-NVW
   | Arizona Corporation, d/b/a)
10 | "RIPOFFREPORT.COM"; ED) | **ORDER**
   | MAGEDSON, an individual, )
11 |                          )
   |       Plaintiffs,        )
12 |                          )
   | vs.                      )
13 |                          )
   |                          )
14 | WILLIAM "BILL" STANLEY, an)
   | individual; WILL "BILL" STANLEY)
15 | d/b/a DEFAMATION ACTION.COM;)
   | WILL "BILL" STANLEY d/b/a)
16 | COMPLAINTREMOVER.COM;)
   | WILLIAM "BILL" STANLEY aka JIM)
17 | RICKSON; WILLIAM "BILL")
   | STANLEY aka MATT JOHNSON;)
18 | ROBERT RUSSO, an individual;)
   | ROBERT RUSSO d/b/a)
19 | COMPLAINTREMOVER.COM;)
   | ROBERT RUSSO d/b/a)
20 | DEFENDMYNAME.COM; ROBERT)
   | RUSSO d/b/a QED MEDIA GROUP,)
21 | L.L.C.; QED MEDIA GROUP, L.L.C.)
   | d/b/a DEFENDMYNAME.COM; QED)
22 | MEDIA GROUP, L.L.C. d/b/a)
   | COMPLAINTREMOVER.COM;)
23 | DEFAMATION ACTION LEAGUE, an)
   | unincorporated association; and)
24 | INTERNET DEFAMATION LEAGUE,)
   | an unincorporated association, )
25 |                          )
   |       Defendants.        )
26 |                          )
27 |_____)
28

Pending before the court are the Second Amended Answer and Counterclaim of Defendants Robert Russo, QED Media Group, LLC, and Internet Defamation League, L.L.C. (Doc. # 35), and the Motion to Dismiss Counterclaims of Defendants Robert Russo, QED Media Group, LLC, and Internet Defamation League, LLC (Doc. # 28).

**I.  Background**

This order addresses whether Counterclaimants Robert Russo, QED Media Group, LLC, and the Internet Defamation League, LLC (collectively, the "QED Counterclaimants"), have adequately alleged actions for defamation and false light invasion of privacy against Counterdefendants Ed Magedson and Xcentric Ventures, LLC ("Xcentric"). The counterclaims are based on the following allegations.

QED Media Group is a Maine limited liability company that offers Internet marketing and software and website design services. As part of an additional public relations service, the company protects clients from online defamation by communicating with operators of offending websites to remove objectionable content and utilizing technologies that optimize client profiles in search engine results. Robert Russo is the CEO and owner of QED Media Group.

Ed Magedson is the manager of Xcentric and operator of Ripoffreport.com, a website that allows visitors to post and review complaints about companies and individuals that engage in wrongful business practices. Magedson's alleged policy is to never remove postings from the Ripoff Report, even if they are proven to be defamatory. However, Magedson will allow businesses that have been criticized on his website a chance to respond upon payment of an allegedly substantial fee. This business model forces many businesses to either leave defamatory content unrefuted or accede to Magedson's demands for payment to respond in the same venue.

Russo contacted Magedson in February 2006 to request that he remove from Ripoffreport.com several allegedly defamatory postings pertaining to clients of QED Media Group. When Magedson refused to cooperate, QED Media Group used its technological capabilities to lower the rankings of the postings in search engine results. By reducing the

prominence of the postings, QED Media Group mitigated the need for its clients to pay Magedson for an opportunity to respond.

Angered by the interference with their revenue, Magedson and Xcentric allegedly devised a scheme to defame the reputations of QED Media Group and Russo. In February 2007, Magedson sent an email to professional media outlets accusing Russo of being an "Internet terrorist" and a member of an "Internet terrorist organization." Doc. # 35 at 23. The email falsely suggested that Russo was responsible for the issuance of two anonymous letters that threatened violence against Magedson, his family, and his dog. Russo believes that the letters, which were attached to the email, were authored by Magedson himself. On March 3, 2007, Magedson filed a report with the Mesa Police Department in which he repeated the allegedly false accusation that Russo was responsible for the threatening letters. The statement that Russo and his company are Internet terrorists was allegedly repeated to QED Media Group clients such as Prosper, Inc., and to this court when Counterdefendants filed claims for defamation, conspiracy, and racketeering. Russo believes that Magedson has also repeated the accusation of terrorism on Internet message boards and in various face-to-face meetings, telephone conversations, written correspondence, and emails.

Shortly after Magedson and Xcentric filed their action in this court, a web page identifying the QED Counterclaimants as "Defendants" in a lawsuit concerning "Racketeer Influenced Corrupt Organizations" began appearing as the top-ranked search result on Google.com for the words "Robert Russo QED." Doc. # 35 at 25-26. Defamatory statements falsely accusing QED Media Group of conducting an "extortion scam fraud" also began to appear on Internet blogs under the name "Mario Capalini." These blogs included http://members.greenpeace.org/blog/mcapalini and http://defendmyname.blogster.com/defendmynamecom_ripoffreport.html. A posting falsely accusing Russo and QED Media Group of engaging in "false promises, lies and extortion," participating in a "dirty con game," and using technologies that are "phony" and "do not exist" was submitted to Ripoffreport.com by "Robert" from "Valhalla, Alabama" on June 15, 2007. *Id.* at 26. An update to the June 15 report that was posted by "Damien" from

"Billings, Montana" falsely described Russo and QED Media Group as "shysters" who "stole $15,000." *Id.* at 27. Counterclaimants believe that Magedson authored all of these statements. The bases for this belief are that Magedson's editorial control over the content of his website enables him to create postings, the names of the apparent authors do not match those of any QED Media Group customers, and QED Media Group had never been the subject of any previous Ripoff Reports. It is alleged that Counterdefendants published the defamatory statements recklessly or with knowledge of falsity and that Counterclaimants have suffered financial and reputational injury as a result.

Counterclaimants' First Amended Answer and Counterclaim alleged defamation (Count I), false light invasion of privacy (Count II), and tortious interference with contract (Count III). Soon after Counterdefendants filed the pending Motion, which seeks the dismissal of Counts I and II under Federal Rule of Civil Procedure 12(b)(6), Counterclaimants filed a Second Amended Answer and Counterclaim raising the same causes of action. Although Counterdefendants' Motion could not have contemplated the newly amended pleading, both sides treat the Motion as applicable to the Second Amended Answer and Counterclaim. The court will do likewise.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (citations and internal quotation marks omitted). When analyzing a complaint for failure to state a claim, all factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994). If a complaint is dismissed, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted).

**III. Analysis**

    **A. The QED Counterclaimants Have Stated a Claim for Defamation**

The tort of defamation requires "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Restatement (Second) of Torts § 558 (1977). Defamatory statements "must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989). Where the target of the statement is a private person, liability will attach if the publisher "knows that the statement is false and that it defames the other," "acts in reckless disregard of these matters," or "acts negligently in failing to ascertain them." Restatement (Second) of Torts § 580B. A defamatory statement will only be actionable in the absence of special harm if it is libelous or imputes to the targeted individual a criminal offense, a "loathsome disease," serious sexual misconduct, or conduct that would adversely affect the target's "fitness for the proper conduct of his lawful business." *Id.* at §§ 569, 570, 573, 575.

Not all of the statements allegedly made by Counterdefendants are actionable. The Second Amended Answer and Counterclaim fails to allege that Counterdefendants' description of the QED Counterclaimants as "Defendants" in a lawsuit concerning "Racketeer Influenced Corrupt Organizations" is false. Doc. # 35 at 25-26. Indeed, from Counterclaimants' own pleading, the statement appears to be true and is therefore not defamatory. *See* Doc. # 35 at 14-17 (answering Counterdefendants' RICO claims).

Other statements are privileged, however defamatory they may be. Liability for defamation cannot be predicated on an individual's report of criminal wrongdoing to the police. *Ledvina v. Cerasani*, 213 Ariz. 569, 573-74, 146 P.3d 70, 74-75 (Ct. App. 2006). A party to litigation is also "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution

of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." Restatement (Second) of Torts § 587. The respective purposes of these two privileges are to "assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing," *Ledvina*, 213 Ariz. at 574, 146 P.3d at 75, and to "ensure the fearless prosecution and defense of claims," *Hall v. Smith*, 214 Ariz. 309, 152 P.3d 1192, 1195 (Ct. App. 2007). The effect of these privileges is that liability for defamation cannot rest on Magedson's allegedly false report to the Mesa Police Department or stem from the defamatory description of Russo and QED Media Group as terrorists in documents filed for litigation before this court.

The QED Counterclaimants have, however, alleged several other defamatory statements that are actionable. The February 2007 email that falsely described Russo as an "Internet terrorist" and member of a "terrorist organization" was allegedly sent to numerous reporters rather than to the police, and it was not made in connection with the current proceedings, which began several months later. The statement that Russo "committed terrorist acts" and "threatened" Magedson's life was made to a QED Media Group client prior to the filing of the Complaint. The accusation that Russo and his company are "shysters" who "stole $15,000," orchestrated an "extortion scam fraud," engaged in "false promises, lies and extortion," and participated in a "dirty con game" were all made shortly after Counterdefendants filed their Complaint, but they also lack any meaningful connection to the current proceedings. The statements were published online rather than in court filings, and they were not addressed to Counterclaimants, their counsel, or the court. In these circumstances, the privilege for litigant communications does not apply. *See Green Acres Trust v. London*, 141 Ariz. 609, 614, 688 P.2d 617, 622 (1984) (requiring that the recipient, content, and manner of an extra-judicial communication bear some relation to the proceeding in order for the privilege to apply) (internal quotation marks omitted); *Hall*, 214 Ariz. 309, 152 P.3d at 1196 (explaining that the litigant privilege is applied to "promote candid and

honest communication between the parties and their counsel in order to resolve disputes"); Restatement (Second) of Torts § 587 cmt. c.

Counterdefendants contend that the QED Counterclaimants' allegations are too vague to state a claim because they do not identify the specific statements that are alleged to be defamatory or the specific fora in which the statements were made. The argument is rejected. The counterclaims could not be more specific in quoting the precise language that is alleged to be defamatory. Where the Counterclaim does not directly quote these statements, it is clearly referring to those that have been quoted. The counterclaims are also sufficiently specific in alleging that the defamatory statements were made in an email sent to reporters in February 2007, on blogs with the addresses http://members.greenpeace.org/blog/mcapalini and http://defendmyname.blogster.com/defendmynamecom_ripoffreport.html, and on the website Ripoffreport.com. Russo's alleged belief that Counterdefendants also repeated the defamatory statements on Internet message boards and in unspecified face-to-face meetings, telephone conversations, written correspondence, and emails does not undermine the specificity of the other allegations. Doc. # 35 at 24.

Counterdefendants misapprehend the standard of review in arguing for dismissal under Rule 12(b)(6) for lack of admissible evidence. Rule 12(b)(6) requires that all factual allegations be taken as true and construed in the light most favorable to the nonmoving party. *Iolab Corp.*, 15 F.3d at 1504. The admissibility of the evidence supporting the allegations is simply not at issue. *Wallace v. Casa Grande Union High School District No. 82 Board of Governors*, 184 Ariz. 419, 909 P.2d 486 (Ct. App. 1995), which considered the admissibility of evidence on review of an entry of summary judgment, does not indicate otherwise. *Id.* at 425, 909 P.2d at 492.

The Motion to Dismiss will be therefore denied with respect to the claim of defamation. The allegations are sufficient with respect to each element of the cause of action.

**B.     The QED Counterclaimants Have Stated a Claim for False Light Invasion of Privacy**

The tort of false light invasion of privacy occurs when a person (1) "gives publicity to a matter concerning another that places the other before the public in a false light," (2) "the false light in which the other was placed would be highly offensive to a reasonable person," and (3) "the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652E. To be highly offensive to a reasonable person, the publicity "must involve a major misrepresentation of the plaintiff's character, history, activities or beliefs, not merely minor or unimportant inaccuracies." *Godbehere*, 162 Ariz. at 341, 783 P.2d at 787.

The Motion to Dismiss will also be denied with respect to the claim for false light invasion of privacy. Counterdefendants assert that Counterclaimants have not alleged facts satisfying the elements of the cause of action, but they offer no supporting explanation. Moreover, the descriptions of Russo as an "Internet terrorist" and "shyster" who orchestrates extortion, fraud, and a "dirty con game" do not facially constitute "trivial indignities," but rather allegedly grave accusations of opprobrious criminal activity that would be highly offensive to a reasonable person. *Godbehere*, 162 Ariz. at 340, 783 P.2d at 786. Because these descriptions were allegedly false and published online with Magedson's knowledge of falsity, the elements of false light invasion of privacy are satisfied.

IT IS THEREFORE ORDERED that the Motion to Dismiss Counterclaims of Defendants Robert Russo, QED Media Group, LLC and Internet Defamation League, LLC (Doc. # 28) IS DENIED.

DATED this 27th day of July 2007.

　　　　　　　　　　　　　　　　　　　　　　　　　　Neil V. Wake
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge