**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona Corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>WILLIAM "BILL" STANLEY, an individual; WILL "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILL "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association,<br><br>    Defendants. | No. CV-07-00954-PHX-NVW<br><br>**ORDER** |

Dockets.Justia.com

Pending before the court is the QED Defendants' Motion to Disqualify Plaintiffs' Counsel (Doc. # 31). The facts stated in this order are based on the findings of fact in support of the preliminary injunction (Doc. # 32). While preliminary and non-final, those findings are adequate to dispose of the Motion.

**I.    Background**

The Complaint alleges that Defendants have made defamatory statements about Plaintiffs and the entities and individuals who provide business services to them, tortiously interfered with Plaintiffs' business relationships, cast Plaintiffs in a false light, committed extortion, and engaged in a pattern of racketeering activity in an effort to force Plaintiffs to remove negative postings about certain companies from its website, Ripoffreport.com. A temporary restraining order was entered on May 11, 2007, prohibiting Defendants from continuing to carry out some of the activity alleged (Doc. # 6). On May 17, 2007, the court held a hearing to receive evidence in support of an application for a preliminary injunction. The evidence included testimony from Plaintiffs' counsel, Maria Crimi Speth, an attorney at the law firm Jaburg & Wilk, P.C., who has represented Plaintiff Xcentric Ventures in various matters for the past seven or eight years. Speth testified that Defendants Robert Russo and William Stanley attempted to punish her for representing Plaintiffs by making defamatory statements about her and her law firm and sending spam email to lawyers at her firm and multiple clients, among other acts. According to Speth, the purpose of this conduct was to make it difficult for Plaintiffs to do business by making it too costly for Speth and her firm to continue providing Plaintiffs with legal services. A preliminary injunction was entered on June 21, 2007, prohibiting Defendants from defaming and otherwise harassing Plaintiffs and the individuals who provide business services to them, including Plaintiffs' counsel (Doc. # 33).

Defendants now move to disqualify Speth and Jaburg & Wilk as Plaintiffs' counsel under the Arizona Rules of Professional Conduct. The Motion contends that Speth and her firm acquired a proprietary interest in the subject matter of the litigation when Stanley posted defamatory statements about them online, that the personal interest of Plaintiffs' counsel in

the litigation creates the risk of a material limitation on the quality of Plaintiffs' representation, and that Plaintiffs' counsel is disqualified because Speth is a necessary witness in the case. Plaintiffs filed an affidavit indicating that they understand the arguments raised by Defendants, find the arguments unconvincing, and desire to retain Speth and her firm as counsel in this case. Doc. # 39, Exh. A. For the reasons explained below, the Motion will be denied.

## II. Standard of Review

"The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). However, in carrying out this duty it must be "solicitous of a client's right freely to choose his counsel and . . . wary of disqualification motions interposed for tactical reasons." *Jamieson v. Slater*, 2006 WL 3421788, at *3 (D. Ariz. Nov. 27, 2006) (internal quotation marks omitted). "Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Super. Ct.*, 141 Ariz. 157, 161, 685 P.2d 1309, 1313 (1984). A motion from opposing counsel to disqualify an attorney based upon an alleged conflict of interest is therefore to be "view[ed] with suspicion." *Gomez v. Super. Ct.*, 149 Ariz. 223, 226, 717 P.2d 902, 905 (1986).

## III. Defendants Have Standing to Move for Disqualification on the Basis of Speth's Dual Role as Counsel and Witness, But Not on the Basis of Her Purported Conflict of Interest

Plaintiffs first argue that Defendants lack standing to move for the disqualification of opposing counsel. To satisfy the requirements for standing under Article III of the United States Constitution, the party seeking relief must show:

> (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the [opposing party]; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005) (internal quotation marks omitted). The burden is on the party seeking relief to establish that these requirements have been

satisfied "with respect to the particular issues the party wishes to have decided." *Colyer v. Smith*, 50 F. Supp. 2d 966, 968 (C.D. Cal. 1999); *see also O'Connor v. Jones*, 946 F.2d 1395, 1400 (8th Cir. 1991) (explaining that the movant "must demonstrate that he has standing to raise the issues in his disqualification motion . . . in order for the court to exercise jurisdiction over his motion").

Plaintiffs' argument is unpersuasive in part. Defendants have standing to move for disqualification on the ground of Speth's simultaneous service as counsel and witness in the case. Speth's dual role will imminently cause injury to Defendants. *Wilbur*, 423 F.3d at 1107. She is a critical witness on the contested issue of the relationship between Russo and Taylor. As counsel, Speth will predicate her argument for liability in part on the close cooperation between those individuals and, in doing so, at least implicitly argue her own credibility as a witness to their relationship. This circumstance will confer a tactical advantage upon Plaintiffs and make it more difficult for Defendants to defeat the claims against them. *Cf. Colyer*, 50 F. Supp. 2d at 974 (finding standing for a party to challenge the opposing counsel's dual role as lawyer and witness).

Defendants do, however, lack standing to move for the disqualification of Plaintiffs' counsel on the ground of conflict of interest. The arguments pertaining to counsel's proprietary and personal interests in the case are predicated exclusively on harm that Plaintiffs might suffer from Speth's continuing representation. Defendants do not argue that the diminished quality of that representation causes them injury. The constitutional requirement of "injury in fact" is unsatisfied in these circumstances. *Wilbur*, 423 F.3d at 1107. It is obvious that, rather than help Plaintiffs obtain effective representation, the conflict-of-interest arguments are designed simply to increase Plaintiffs' costs and interfere with their ability to pursue their claims and defend against counterclaims. Standing cannot be predicated on this type of interest. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 90 (5th Cir. 1976); *see also Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 105, 624 P.2d 296, 302 (1981) ("To call for disqualification of opposing counsel

for delay or other tactical reasons, in the absence of prejudice to either side, is a practice which will not be tolerated.").

Defendants contend that their attorney's responsibility to "inform the appropriate professional authority" of ethics violations under the Arizona Rules of Professional Conduct, ER 8.3(a), creates standing even where injury in fact is absent. The Ninth Circuit has not squarely addressed this issue, and other courts are split on the matter. Those that have adopted Defendants' approach find it incongruous to deny for lack of standing a motion to disqualify opposing counsel when state law requires the authoring attorney to report the subject matter of the motion. *See Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984); *United States v. Clarkson*, 567 F.2d 270, 271 n.1 (4th Cir. 1977); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977). These cases view the party's motion to disqualify as a means by which the authoring attorney may comply with his or her obligation to report ethics violations.

The contrary approach is that, generally, "only a current or former client of an attorney has standing to complain of an attorney's representation of interests adverse to that current or former client." *Jamieson*, 2006 WL 3421788, at *4. A non-client will have standing to move for disqualification only when an ethical violation is so "manifest and glaring," *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976), that it "impacts the . . . [non-client's] interest in a just and lawful determination" of the case, *Colyer*, 50 F. Supp. 2d at 969; *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984); *O'Connor*, 946 F.2d at 1400-01. This approach, which discounts the significance of state law reporting obligations, is motivated by the limits of Article III standing and by concern that non-client standing would facilitate the misuse of disqualification rules by individuals who do not have the client's interests at heart. *See In re Yarn Processing Patent Validity Litig.*, 530 F.2d at 90.

The court finds the latter view more persuasive and therefore rejects Defendants argument. The Ninth Circuit has indicated that it has "difficulty seeing how [an opposing party] has standing to complain about a possible conflict of interest . . . having nothing to do

with her own representation" and that, as a general rule, "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification." *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). *Kasza* ultimately found it unnecessary to rule on the issue of standing, but the case makes apparent that the Ninth Circuit is disinclined to follow the rule articulated in *Kevlik*, *Clarkson*, and *Daniel International Corp*. Equally important, while the rationale of *Kevlik* and its progeny applies to this case due to the reporting obligations of attorneys in Arizona, it is difficult to see how the simple presence of that professional responsibility can provide standing in federal court. A reporting obligation is not an "injury in fact," *see Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869, 872 (9th Cir. 1995) ("injury in fact . . . means an invasion of a legally protected interest"), and even if it were, the focal point of the "injury in fact" analysis is the party, not the attorney, so the attorney's obligation cannot logically determine the party's standing, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (the "injury in fact" necessary for standing "requires that the party seeking review be himself among the injured").

*Jamieson* does not warrant a different conclusion. That case, which found that a litigant had standing to move for the disqualification of opposing counsel, does not stand for the proposition that the professional obligation to report ethics violations in Arizona independently confers standing upon the party seeking disqualification. Rather, standing in *Jamieson* was predicated on the combination of the state law reporting obligation, the likelihood that the proffered representation "would . . . have a negative impact on [the other party's] interest in obtaining a just and lawful determination of the claims at issue," and the absence of "evidence that [the motion was] filed for tactical reasons." 2006 WL 3421788, at *5. Unlike the motion in *Jamieson*, the present Motion failed to articulate how Plaintiffs' representation will imminently result in any injury to Defendants and is transparently motivated by tactical considerations. Insofar as *Jamieson* suggests that the attorney's reporting obligation is even supportive of standing, the court respectfully disagrees.

Because Defendants lack standing to move for disqualification on the basis of conflict of interest, the court does not have jurisdiction to decide whether counsel's purported

proprietary and personal interests in the case warrant disqualification. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1107 n.4 (9th Cir. 2006).

### IV. Even Assuming that Defendants Have Standing with Respect to all of the Disqualification Issues, Disqualification of Plaintiffs' Counsel is Unwarranted

Due to lack of jurisdiction, the court cannot rule on the merits of those aspects of the Motion that seek disqualification on the basis of counsel's conflict of interest. However, given the cited division of authority and absence of directly applicable authority from the Ninth Circuit, the court will conditionally address the merits of Defendants' conflict-of-interest arguments to avoid an unnecessary remand in the event that the court's ruling on standing is disapproved on appeal. Defendants' remaining argument for disqualification will be decided on the merits.

#### A. Disqualification Would Be Unwarranted Under Rule 1.7(a)(2)

Defendants contend that the representation provided by Plaintiff's counsel creates a conflict of interest requiring disqualification under Rule 1.7(a)(2). The Rule generally prohibits representation of a client where "there is a significant risk that the representation . . . will be materially limited . . . by a personal interest of the lawyer." Representation may only proceed despite the presence of such a risk where (1) the "affected client gives informed consent, confirmed in writing," (2) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," (3) "the representation is not prohibited by law," and (4) "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." Ariz. R. Prof. Conduct, ER 1.7(b). This analysis seeks to determine "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." *Id.* at cmt. 8.

The Motion would be denied with respect to Rule 1.7(a)(2) because the exception expressed in Rule 1.7(b) applies. The affidavit from Plaintiff Ed Magedson states that he is

aware of the conflict that Defendants allege but nevertheless wishes to retain Speth and Jaburg & Wilk as his counsel in this case. Doc. # 39 at Exh. A. Given that the conflict of interest is purely conjectural at this point, that the interests of Speth and Plaintiffs in removing the defamatory statements are by all appearances consistent, and that Speth is uniquely positioned to pursue the representation due to her longstanding attorney-client relationship with Plaintiffs and knowledge of the case, it is reasonable for Speth to believe that she will be able to provide competent and diligent representation. The representation, moreover, is not prohibited by law and does not involve the assertion of conflicting claims among Speth's clients.

### B. Disqualification Would Be Unwarranted Under Rule 1.8

Rule 1.8(i) states in part that a "lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." The rationale behind this prohibition is that an attorney who acquires a proprietary interest in the subject of his client's case is more likely to "plac[e] his own recovery ahead of his client," *In re Stewart*, 121 Ariz. 243, 245, 589 P.2d 886, 888 (1979), and less likely to "seek and accept client guidance on major decisions in the lawsuit," *Ankerman v. Mancuso*, 271 Conn. 772, 779, 860 A.2d 244, 247 (2004). Defendants contend that Plaintiffs' representation violates this Rule because several of the defamatory statements at issue adversely affect the business interests of Speth and her firm and create an independent incentive for them to pursue an action against Defendants.

Defendants' argument would be rejected, in part because Plaintiffs' counsel has not acquired a cognizable proprietary interest in the litigation. Other than possibly attorney's fees, neither Speth nor her firm lay claim to any monetary entitlement that is contingent upon the outcome of the case. Damages are sought exclusively for Plaintiffs. Although a favorable outcome for Plaintiffs would likely benefit their counsel by clarifying that Defendants' conduct was generally unlawful, there is little basis for concluding that such a benefit is a "proprietary interest" that will interfere with the legal representation, particularly where Plaintiffs have voiced their continuing desire to retain their current counsel despite the

purported conflict of interest. *See* Black's Law Dictionary 1256 (8th ed. 1999) (defining "proprietary" as "[o]f, or relating to, or holding as property").

Even assuming that a cognizable proprietary interest is present, the court would not disqualify Plaintiffs' counsel on that basis when Defendants' unlawful conduct is the source of the interest. To burden Plaintiffs with disqualification in such circumstances would effectively reward Defendants for bad behavior.

**C. Disqualification Is Unwarranted Under Rule 3.7**

Rule 3.7 states that a "lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless" (1) "the testimony relates to an uncontested issue," (2) "the testimony relates to the nature and value of legal services rendered in the case," or (3) "disqualification of the lawyer would work substantial hardship on the client." Ariz. R. Prof. Conduct, ER 3.7(a). Defendants contend that the Rule disqualifies both Speth and her firm because Speth is a necessary witness on the nature of the relationship between Stanley and Russo.

The argument is again unpersuasive. To the extent that Speth's future argument of her own credibility will wound Defendants, that wound is self-inflicted. Common sense dictates against disqualification in these circumstances. Moreover, due to the defamatory statements made about Plaintiffs' counsel, Defendants' demonstration of a commitment to harass any entity that provides a business or legal service to Plaintiffs, the threats that led separate counsel for Plaintiffs to quit in a previous matter, Doc. # 39, Exh. A at 3, the longstanding attorney-client relationship between Plaintiffs and their counsel, and the familiarity of Plaintiffs' counsel with the case, it is apparent that disqualification would work substantial hardship on Plaintiffs. If Speth were disqualified, Defendants' conduct would make it difficult for Plaintiffs to retain new representation. An attorney contemplating taking the case could easily view the defamatory statements and harassment of Plaintiffs' current and previous counsel as sufficiently injurious to outweigh any professional benefit in pursuing the representation.

1   IT IS THEREFORE ORDERED that the QED Defendants' Motion to Disqualify
2   Plaintiffs' Counsel (Doc. # 31) is DENIED.
3   IT IS FURTHER ORDERED denying Defendants' Motion for Oral Argument (Doc.
4   # 45).
5   DATED this 27th day of July 2007.

_____
Neil V. Wake
United States District Judge