# EXHIBIT 1

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association;<br><br>Defendants. | Case No: 2:07-CV-00954-NVW<br><br>**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CONTEMPT HEARING** |

Pending before this Court is Plaintiffs Xcentric Ventures, LLC and Ed Magedson (collectively, "Plaintiffs") Order to Show Cause why Defendants should not be held in contempt for failure to comply with the Preliminary Injunction entered by this Court on

2

June 21, 2007. The court issues the following findings of fact and conclusions of law in support of a finding of contempt against all Defendants.

**I.      FINDINGS OF FACT**

(1) Plaintiff Ed Magedson is an Arizona resident and the manager of Plaintiff Xcentric Ventures, LLC, a company that operates a website known as "Ripoff Report" at www.ripoffreport.com. The site allows visitors to post and review complaints about companies and individuals that allegedly engage in wrongful business practices. Because the complaints are searchable in various search engines, they can draw significant negative attention to targeted businesses. Among the estimated millions of daily visitors to the website are law enforcement agencies that use the Ripoff Report to gather information about patterns of wrongful business activity.

(2) Defendant William Stanley does business under the trade name "Reputation Management" and operates numerous websites, including www.defamationaction.com, www.videowebsites.com, www.complaintremover.com, www.remove-rip-off-reports.com, www.repsavior.com, www.ironserver.com, www.jaburgwilksucks.com, www.bryanvincentassociates.com, www.tiscaliwatch.com, www.pmgisucks.com, www.mariaspeth.com, and www.mariacrimispeth.com. Defendant Stanley is a member of the Defamation Action League, an unincorporated association. His place of residency is unknown and he uses the aliases "Jim Rickson" and "Matt Johnson". Stanley has been placed on the Register of Known Spam Operations ("ROKSO") as a professional spam operator who has been terminated by a minimum of three Internet service providers for spam offenses.

(3) Defendant Robert Russo is a resident of Maine and is the CEO and owner of QED Media Group, LLC, a web-based provider of various Internet services, including Search Engine Optimization. Defendant Russo owns and operates various websites, including www.defendmyname.com, www.qedmediagroup.com, www.interactivevideosystems.com, and www.internetdefamationleague.com.

(4) A Preliminary Injunction and Findings of Fact and Conclusions of Law were entered by this Court on June 21, 2007 against all Defendants.

### A. **Defendant Stanley Violated The Preliminary Injunction and Remains in Violation of the Injunction.**

(5) The Preliminary Injunction specifically addressed six websites owned and operated by Stanley. Stanley was ordered to take down two of these websites – www.jaburgwilksucks.com and www.pmgisucks.com – so that the domain names would no longer exist. Stanley was ordered to remove all false and defamatory content from the remaining four websites – www.bryanvincentassociates.com, www.tiscaliwatch.com, www.mariaspeth.com, and www.mariacrimispeth.com.

(6) As of October 31, 2007, the domain names www.jaburgwilksucks.com has not been taken down; rather it now contains content related to removing negative information from the internet through search optimization services.

(7) As of October 31, 2007, the domain name www.bryanvicnentassociates.com now connects to content related to removing negative information from the internet through search optimization services.

(8) As of October 31, 2007, the domain name www.pmgisucks.com does not connect with any web page.

(9) As of October 31, 2007, the domain names www.mariapseth.com, www.mariacrimispeth.com, and www.tiscaliwatch.com do not connect with any web page.

(10) As of the date of the Order to Show Cause, each of the six websites identified in the Preliminary Injunction remained active, with the false and defamatory content still available to users of the Internet.

(11) Defendant Stanley violated the terms of the Preliminary Injunction as to each of the websites listed in the Preliminary Injunction and remains in violation of the terms of the Preliminary Injunction with respect to the jaburgwilksucks.com website.

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

### B. Defendant Russo Is In Violation of the Preliminary Injunction.

(12) The content currently located at www.jaburgwilksucks.com advertises the services of Defendant QED Media.

(13) On or about January 29, 2007, Defendant Stanley sent an email to Prolexic, the former host of the ROR websites. Defendant Stanley signed the email "William Stanley Internet Defamation League," which an organization created by Defendant Russo.

(14) An IP address (Internet Protocol address) is a unique address that certain electronic devices use in order to identify and communicate with each other on a computer network utilizing the Internet Protocol standard (IP) – in simpler terms, a computer address. IP addresses can appear to be shared by multiple client devices either because they are part of a shared hosting web server environment or because a network address translator (NAT) or proxy server acts as an intermediary agent on behalf of its customers, in which case the real originating IP addresses might be hidden from the server receiving a request.

(15) The IP address for Defendant Russo's website www.defendmyname.com is 66.185.126.189. The IP address for Defendant Stanley's website www.ironserver.com is 66.185.126.188.

(16) The IP address for Defendant Russo's website www.internetdefamationleague.com is 80.109.231.7. The IP address for Defendant Stanley's websites www.bryanvincentassociates.com, www.tiscaliwatch.com, and www.pmgisucks.com is also 80.109.231.7.

(17) That Defendant Stanley's and Defendant Russo's websites share an IP address indicates that either they emanate from the same computer server or share a web host server.

5

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

(18) The content on Defendant Stanley's website www.videowebsites.com is exactly the same as the content on Defendant Russo's website www.interactivevideosystems.com.

(19) The content on Defendant Stanley's website www.videowebsites.com states that the copyright for the website is owned by InteractiveVideoSystems, "a division of qedmediagroup LLC".

(20) The telephone number listed for the contact information on both Defendant Stanley's www.videowebsites.com and Defendant Russo's www.interactivevideosystems.com is 1-866-268-5588.

(21) The telephone number listed as the contact information on both Defendant Stanley's www.complaintremover.com and Defendant Russo's www.defendmyname.com is also 1-866-268-5588.

(22) The telephone number listed as the contact information on Defendant Russo's website www.qedmediagroup.com is also 1-866-268-5588.

(23) On May 16, 2007, the domain server for Defendant Stanley's websites www.jaburgwilksucks.com, www.mariacrimispeth.com, and www.mariaspeth.com was ns1.xtrasupply.com.

(24) When "ns1.xtrasupply.com" was entered as a domain name, the Internet user was linked directly to www.videowebsites.com, the website owned by Defendant Stanley that contains the identical content as Defendant Russo's website www.interactivevideosystems.com.

(25) At the hearing before this Court on May 17, 2007, evidence was presented to the court that the www.jaburgwilksucks.com domain name traced to Defendant Russo's content. Defendant Stanley was not in attendance at the May 17th hearing, but Defendant Russo was present through counsel. The contents of the hearing were not published anywhere.

(26) On May 23, 2007, the domain server for the website www.jaburgwilksucks.com was re-directed to ns10.xtrasupplycom, which does not directly link to Defendant Russo's content.

(27) The re-direction of the domain name six days after the hearing to remove the link to Defendant Russo is an indication that Defendant Russo was able to and did exercise control over the operation of the www.jaburgwilksucks.com website.

(28) In April, 2006, an advertisement was posted for Defendant Stanley's website www.ironserver.com at http://lists.open-bio.org/pipermail/ontologies/2006-April.txt. This advertisement was posted from "unix at techfiesta.com". In the posting, a telephone number is provided for individuals interested in his website to contact him. The listed telephone number is (207) 899-2332.

(29) The subsequent posting at http://lists.open-bio.org/pipermail/ontologies/2006-April.txt is also from "unix at techfiesta.com". The second posting was made on behalf of www.defendmyname.com, which is Defendant Russo's website. In the second posting, the telephone number provided is shown as (207) 899-2332.

(30) The whois registration for Defendant Russo's www.interentdefamationleague.com provides an address of Klagenfurt Austria, the same city that Defendant Stanley lists in his registrations.

(31) The whois registration information for Defendant Russo's www.internetdefamationleague.com also uses the telephone number (512) 853-9790. This telephone number is _identical_ to the telephone number provided by Defendant Stanley for a vast number of his website registrations.

(32) Defendant Stanley's website www.ironserver.com is hosted by a qedhosting.com, a name that is very similar to QEDMedia Group.

(33) In recorded telephone conversations between Defendant Russo and Plaintiff Magedson, Defendant Russo conveyed threats on behalf of Defendant Stanley, and made and proposals on behalf of Stanley.

7

(34) In or about December 11, 2006, Defendant Stanley represented to Google that Defendant Russo was "a guy [he] hired" and that Defendant Russo was working with him.

(35) Defendant Russo has acted as an agent of Defendant Stanley.

(36) Defendant Stanley has acted as an agent of Defendant Russo.

(37) Defendant Stanley has acted as an agent of Defendant QED Media Group, LLC.

### C. Although Plaintiffs' Efforts Have Resulted In The Removal From The Internet Of Content That Violates The Preliminary Injunction, There Is No Indication that Defendant Stanley Has Attempted to Comply.

(38) Between July 12, 2007 and July 30, 2007, Plaintiffs mailed, e-mailed, and faxed letters to all known and discoverable contacts for all websites expressly identified in the Preliminary Injunction.

(39) As a result of the communications sent by Plaintiffs, certain companies and/or individuals have removed the content that violates the Preliminary Injunction.

(40) After the Preliminary Injunction was issued, additional defamatory content was created and published by Defendants.

(41) There has been no evidence that Defendant Stanley has made any attempt to request removal of content as ordered in the Preliminary Injunction.

(42) Despite Plaintiff's requests, content ordered by the Court to be removed still exists on the Internet.

## II. CONCLUSIONS OF LAW

### A. Persons Bound By The Preliminary Injunction

(43) Federal Rules of Civil Procedure, Rule 65(d) provides that: "Every order granting an injunction… is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

(44) Defendant Russo was bound by the provisions in the Preliminary Injunction that ordered Defendant Stanley to remove websites and content because Defendant Russo was acting as an agent of Defendant Stanley, was acting in active concert and participation with Defendant Stanley, and had actual notice of the order.

(45) Defendants QEDMedia Group, LLC., Russo, and Stanley and their agents, and those acting under their supervision and control or at their request were preliminarily enjoined from knowingly making, or causing to be made, and transmitting to any third party any false and defamatory statement or representation concerning any false and defamatory statement or representations concerning Ed Magedson, Xcentric Ventures, or any entity or individual that provides a business or legal service to Xcentric. Defendants QEDMedia Group, LLC, Russo and Stanley made such false statements by either posting or causing to be posted the same content that was determined to be defamatory on additional websites after the Preliminary Injunction was entered.

### B. Civil Contempt

(46) The standard for finding a party in civil contempt in the Ninth Circuit is well established: "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC.*, 179 F.3d 1228, 1239 (9th Cir.1999) (citations omitted).

(47) Defendants have disobeyed a specific and definite order by failing to take all reasonable steps within their power to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.1993). It is important to note that the contempt does not need to be willful and there is no good faith exception to the requirement of obedience to a court order. *Id.*

(48) Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both. *United States v. Mine Workers*, 330 U.S. 258, 303-

304, 67 S.Ct. 677, 700-701, 91 L.Ed. 884 (1947); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir.1985).

(49) Plaintiffs are entitled to coercive sanctions to require Defendants to comply with the Preliminary Injunction.

(50) Plaintiffs are entitled to compensatory sanctions to compensate them for the injuries suffered as a result of Defendants' contemptuous behavior.

### B. <u>Criminal Contempt</u>

(51) The purpose of the criminal contempt sentence "is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Most contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience.

(52) "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988). See *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943) (double jeopardy); *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers*, 221 U.S. at 444, 31 S.Ct. at 499 (privilege against self-incrimination, right to proof beyond a reasonable doubt).

(53) For "serious" criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial. *Bloom*, 391 U.S., at 199, 88 S.Ct., at 1481, *see also Taylor v. Hayes*, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701-2702, 41 L.Ed.2d 897 (1974).

(54) A fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a "completed act of disobedience," *Gompers*, 221 U.S., at 443, 31

10

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

1  S.Ct., at 498, such that the contemnor cannot avoid or abbreviate the confinement through
2  later compliance.
3  (55) A finding of criminal contempt should be entered against Defendants for their
4  contemptuous actions.
5  (56) A finding of criminal contempt against Defendants will initiate proceedings in
6  the same way that a finding of probable cause is necessary to secure any search or arrest
7  warrant. The arrest warrant will be issued for the purpose of arraigning Defendants to
8  face charges of criminal contempt. No actual judgment of conviction is being sought or
9  could be entered at this time.
10  (57) Plaintiffs are entitled an Order of Contempt.
11  DATED: _____

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012