JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, an Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM "BILL" STANLEY, an individual; WILLIAM "BILL" STANLEY d/b/a DEFAMATION ACTION.COM; WILLIAM "BILL" STANLEY d/b/a COMPLAINTREMOVER.COM; WILLIAM "BILL" STANLEY aka JIM RICKSON; WILLIAM "BILL" STANLEY aka MATT JOHNSON; ROBERT RUSSO, an individual; ROBERT RUSSO d/b/a COMPLAINTREMOVER.COM; ROBERT RUSSO d/b/a DEFENDMYNAME.COM; ROBERT RUSSO d/b/a QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C.; QED MEDIA GROUP, L.L.C. d/b/a DEFENDMYNAME.COM; QED MEDIA GROUP, L.L.C. d/b/a COMPLAINTREMOVER.COM; DEFAMATION ACTION LEAGUE, an unincorporated association; and INTERNET DEFAMATION LEAGUE, an unincorporated association;<br><br>Defendants. | Case No: 2:07-CV-00954-NVW<br><br>**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CONTEMPT OF DEFENDANTS WILLIAM STANLEY AND QED MEDIA GROUP, LLC** |

Pending before this Court is Plaintiffs Xcentric Ventures, LLC and Ed Magedson (collectively, "Plaintiffs") Order to Show Cause why Defendants should not be held in contempt for failure to comply with the Preliminary Injunction entered by this Court on

June 21, 2007. The court issues the following findings of fact and conclusions of law in support of a finding of contempt against all Defendants.

## I. FINDINGS OF FACT

(1) Plaintiff Ed Magedson is an Arizona resident and the manager of Plaintiff Xcentric Ventures, LLC, a company that operates a website known as "Ripoff Report" at www.ripoffreport.com. The site allows visitors to post and review complaints about companies and individuals that allegedly engage in wrongful business practices. Because the complaints are searchable in various search engines, they can draw significant negative attention to targeted businesses. Among the estimated millions of daily visitors to the website are law enforcement agencies that use the Ripoff Report to gather information about patterns of wrongful business activity.

(2) Defendant William Stanley does business under the trade name "Reputation Management" and operates numerous websites, including www.defamationaction.com, www.videowebsites.com, www.complaintremover.com, www.remove-rip-off-reports.com, www.repsavior.com, www.ironserver.com, www.jaburgwilksucks.com, www.bryanvincentassociates.com, www.tiscaliwatch.com, www.pmgisucks.com, www.mariaspeth.com, and www.mariacrimispeth.com. Defendant Stanley is a member of the Defamation Action League, an unincorporated association. His place of residence is unknown and he uses the aliases "Jim Rickson" and "Matt Johnson". Stanley has been placed on the Register of Known Spam Operations ("ROKSO") as a professional spam operator who has been terminated by a minimum of three Internet service providers for spam offenses.

(3) Defendant Robert Russo is a resident of Maine and is the CEO and owner of Defendant QED Media Group, LLC, a web-based provider of various Internet services, including Search Engine Optimization. Defendant Russo owns and operates various websites, including www.defendmyname.com, www.qedmediagroup.com, www.interactivevideosystems.com, and www.internetdefamationleague.com.

(4) A Preliminary Injunction and Findings of Fact and Conclusions of Law were entered by this Court on June 21, 2007 against all Defendants.

**A. <u>Defendant Stanley Violated The Preliminary Injunction and Remains in Violation of the Injunction.</u>**

(5) The Preliminary Injunction specifically addressed six websites owned and operated by Stanley. Stanley was ordered to take down two of these websites – www.jaburgwilksucks.com and www.pmgisucks.com – so that the domain names would no longer exist. Stanley was ordered to remove all false and defamatory content from the remaining four websites – www.bryanvincentassociates.com, www.tiscaliwatch.com, www.mariaspeth.com, and www.mariacrimispeth.com.

(6) As of October 31, 2007, the domain name www.jaburgwilksucks.com had not been taken down; rather it contained content related to removing negative information from the internet through search optimization services.

(7) As of November 2, 2007, the domain name www.jaburgwilksucks.com had been taken down.

(8) As of October 31, 2007, the domain name www.bryanvicnentassociates.com now connects to content related to removing negative information from the internet through search optimization services.

(9) As of October 31, 2007, the domain name www.pmgisucks.com does not connect with any web page.

(10) As of October 31, 2007, the domain names www.mariapseth.com, www.mariacrimispeth.com, and www.tiscaliwatch.com do not connect with any web page.

(11) As of the date of the Order to Show Cause, each of the six websites identified in the Preliminary Injunction remained active, with the false and defamatory content still available to users of the Internet.

3

10297-14/LAR/LAR/620978_v1

Case 2:07-cv-00954-NVW   Document 99   Filed 11/09/2007   Page 3 of 12

(12) On July 5, 2007, Defendant Stanley sent an e-mail to counsel for Plaintiffs Maria Crimi Speth, informing her that "what is being posted now cannot be removed."

(13) On July 5, 2007, Defendant Stanley caused false and defamatory statements about Plaintiffs to be posted on dozens of web-boards and blogs across the Internet.

(14) Defendant Stanley received the Preliminary Injunction promptly from Plaintiffs' counsel

(15) Defendant Stanley was required to comply with the language of the Preliminary Injunction.

(16) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by failing to remove the website www.jaburgwilksucks.com.

(17) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by failing to promptly remove the content from the website www.bryanvincentassociates.com.

(18) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by causing false and defamatory content to be posted about Plaintiffs on web-boards and blogs after the Preliminary Injunction was entered.

### B. Defendant Stanley Violated The Preliminary Injunction In His Capacity As An Agent of Defendant QED Media Group, LLC.

(19) The content formerly located at www.jaburgwilksucks.com advertises the services of Defendant QED.

(20) On or about January 29, 2007, Defendant Stanley sent an email to Prolexic, the former host of the ROR websites. Defendant Stanley signed the email "William Stanley Internet Defamation League," which an organization created by Defendant Russo.

(21) An IP address (Internet Protocol address) is a unique address that certain electronic devices use in order to identify and communicate with each other on a computer network utilizing the Internet Protocol standard (IP) – in simpler terms, a computer address. IP addresses can appear to be shared by multiple client devices either because they are part of a shared hosting web server environment or because a network address

4

10297-14/LAR/LAR/620978_v1
Case 2:07-cv-00954-NVW   Document 99   Filed 11/09/2007   Page 4 of 12

translator (NAT) or proxy server acts as an intermediary agent on behalf of its customers, in which case the real originating IP addresses might be hidden from the server receiving a request.

(22) The IP address for Defendant QED's website www.defendmyname.com is 66.185.126.189. The IP address for Defendant Stanley's website www.ironserver.com is 66.185.126.188.

(23) That Defendant Stanley's and Defendant QED's websites share an IP address indicates that either they emanate from the same computer server or share a web host server.

(24) The content on Defendant Stanley's website www.videowebsites.com is exactly the same as the content on Defendant QED's website www.interactivevideosystems.com.

(25) The content on Defendant Stanley's website www.videowebsites.com states that the copyright for the website is owned by InteractiveVideoSystems, "a division of qedmediagroup LLC".

(26) The telephone number listed for the contact information on both Defendant Stanley's www.videowebsites.com and Defendant QED's www.interactivevideosystems.com is 1-866-268-5588.

(27) The telephone number listed as the contact information on both Defendant Stanley's www.complaintremover.com and Defendant QED's www.defendmyname.com is also 1-866-268-5588.

(28) The telephone number listed as the contact information on Defendant QED's website www.qedmediagroup.com is also 1-866-268-5588.

(29) On May 16, 2007, the domain server for Defendant Stanley's websites www.jaburgwilksucks.com, www.mariacrimispeth.com, and www.mariaspeth.com was ns1.xtrasupply.com.

(30) When "ns1.xtrasupply.com" was entered as a domain name, the Internet user was linked directly to www.videowebsites.com, the website owned by Defendant Stanley

5

that contains the identical content as Defendant QED's website www.interactivevideosystems.com.

(31) At the hearing before this Court on May 17, 2007, evidence was presented to the court that the www.jaburgwilksucks.com domain name traced to Defendant QED's content. Defendant Stanley was not in attendance at the May 17th hearing, but Defendants Russo and QED were present through counsel. The contents of the hearing were not published anywhere.

(32) On May 23, 2007, the domain server for the website www.jaburgwilksucks.com was re-directed to ns10.xtrasupplycom, which does not directly link to Defendant QED's content.

(33) The re-direction of the domain name six days after the hearing to remove the link to Defendant QED is an indication that Defendants Russo and QED were able to and did exercise control over the operation of the www.jaburgwilksucks.com website.

(34) In April, 2006, an advertisement was posted for Defendant Stanley's website www.ironserver.com at http://lists.open-bio.org/pipermail/ontologies/2006-April.txt. This advertisement was posted from "unix at techfiesta.com". In the posting, a telephone number is provided for individuals interested in his website to contact him. The listed telephone number is (207) 899-2332.

(35) The subsequent posting at http://lists.open-bio.org/pipermail/ontologies/2006-April.txt is also from "unix at techfiesta.com". The second posting was made on behalf of www.defendmyname.com, which is Defendant QED's website. In the second posting, the telephone number provided is shown as (207) 899-2332.

(36) Defendant Stanley's website www.ironserver.com is hosted by a qedhosting.com, a name that is very similar to Defendant QED Media Group, LLC.

(37) In recorded telephone conversations between Defendant Russo and Plaintiff Magedson, Defendant Russo conveyed threats on behalf of Defendant Stanley, and made and proposals on behalf of Stanley.

(38) In or about December 11, 2006, Defendant Stanley represented to Google that Defendant Russo was "a guy [he] hired" and that Defendant Russo was working with him.

(39) Defendant Stanley refers all clients pertaining to www.ripoffreport.com to Defendant QED.

(40) Defendant Stanley does not perform any work for any client relating to www.ripoffreport.com.

(41) Defendant QED makes a "very large profit" due to the activities of Defendant Stanley.

(42) Defendant QED has received financial benefit from Defendant Stanley's violations of the Preliminary Injunction.

(43) Defendant Stanley has acted as an agent of Defendant Russo.

(44) Defendant Russo has acted as an agent of Defendant Stanley.

(45) Defendant Stanley has acted as an agent of Defendant QED.

(46) Defendant Stanley acted on behalf of Defendant QED and within the scope of his agency with Defendant QED in posting and re-posting the false and defamatory content about Plaintiffs.

(47) Defendant Stanley acted on behalf of Defendant QED and within the scope of his agency with QED by failing to remove false and defamatory content about Plaintiffs.

(48) Defendant QED was in active concert with Defendant Stanley.

**C. Defendant QED Media Group, LLC Violated The Preliminary Injunction.**

(49) Defendant QED has determined Xcentric's Corporate Advocacy Program to be in direct competition to the services that it offers.

(50) Defendant QED will benefit financially if customers are diverted from the Corporate Advocacy Program to Defendant QED's services.

(51) As a direct and proximate result of Defendant Stanley's false and defamatory characterization of the Corporate Advocacy Program as "extortion", Defendant QED obtained financial benefit.

(52) Defendant QED had notice of the Preliminary Injunction.

(53) Defendant QED was enjoined from "knowingly making, or causing to be made" false and defamatory statements.

(54) Defendant QED knowingly allowed its agent, Defendant Stanley, to make and publish false and defamatory statements, for the benefit of QED.

(55) Defendant QED aided and abetted Defendant Stanley in his violation of the Preliminary Injunction.

(56) Defendant QED acted in active concert with Defendant Stanley in violating the Preliminary Injunction.

(57) Defendant QED was required to "make reasonable efforts to remove or have removed any content incompatible" with the Preliminary Injunction.

(58) Defendant QED failed to make any effort to remove or have removed any content incompatible with the Preliminary Injunction.

**D. Although Plaintiffs' Efforts Have Resulted In The Removal From The Internet Of Content That Violates The Preliminary Injunction, There Is No Indication that Defendant Stanley Or Defendant QED Media Group, LLC Has Attempted to Comply.**

(59) Between July 12, 2007 and July 30, 2007, Plaintiffs mailed, e-mailed, and faxed letters to all known and discoverable contacts for all websites expressly identified in the Preliminary Injunction.

(60) As a result of the communications sent by Plaintiffs, certain companies and/or individuals have removed the content that violates the Preliminary Injunction.

(61) After the Preliminary Injunction was issued, additional defamatory content was created and published by Defendants.

(62) There has been no evidence that Defendants Stanley or QED have made any attempt to request removal of content as ordered in the Preliminary Injunction.

8

(63) Despite Plaintiff's requests, content ordered by the Court to be removed still exists on the Internet.

## II. CONCLUSIONS OF LAW

### A. Persons Bound By The Preliminary Injunction

(64) Federal Rule of Civil Procedure, Rule 65(d) provides that: "Every order granting an injunction… is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

(65) Defendant Stanley received actual notice of the Preliminary Injunction and was therefore bound by the provisions of the Preliminary Injunction.

(66) Defendant QED received actual notice of the Preliminary Injunction and was therefore bound by the provisions in the Preliminary Injunction.

(67) Defendants QED, Russo, Stanley, and their agents, those acting under their supervision and control, or those acting at their request were enjoined from knowingly making, or causing to be made, and transmitting to any third party any false and defamatory statement or representation concerning Ed Magedson, Xcentric, or any entity or individual that provides a business or legal service to Xcentric. Defendants QED, Russo, and Stanley made such false statements by either posting or causing to be posted the same content that was determined to be defamatory on additional websites after the Preliminary Injunction was entered.

(68) Defendants QED, Russo, Stanley, and their agents, those acting under their supervision and control, or those acting at their request were affirmatively obligated to make reasonable efforts to remove or have removed any content incompatible with the Preliminary Injunction. Defendants QED, Russo, and Stanley failed to make any efforts to remove or have removed any content incompatible with the Preliminary Injunction.

//

//

### B. Civil Contempt

(69) The standard for finding a party in civil contempt in the Ninth Circuit is well established: "[t]he moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*., 179 F.3d 1228, 1239 (9th Cir.1999) (citations omitted).

(70) Defendants have disobeyed a specific and definite order by failing to take all reasonable steps within their power to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir.1993). It is important to note that the contempt does not need to be willful and there is no good faith exception to the requirement of obedience to a court order. *Id*.

(71) As an agent of Defendant QED, Defendant Stanley willfully violated the Preliminary Injunction. "Once it is determined that the corporate agent willfully violated a clear contempt order, the corporation must bear responsibility." *U.S. v. Twentieth Century Fox Film Corp*., 882 F.2d 656, 661 (2d Cir. (NY) 1989).

(72) Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both. *United States v. Mine Workers*, 330 U.S. 258, 303-304, 67 S.Ct. 677, 700-701, 91 L.Ed. 884 (1947); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir.1985).

(73) Plaintiffs are entitled to coercive sanctions to require Defendants to comply with the Preliminary Injunction.

(74) Plaintiffs are entitled to compensatory sanctions to compensate them for the injuries suffered as a result of Defendants' contemptuous behavior.

### C. Criminal Contempt

(75) "Criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and the contemnor willfully disobeys the

10

order." *U.S. v. Doe*, 125 F.3d 1249, 1254 (9th Cir.1997) (quoting *United States v. Powers*, 629 F.2d 619, 627 (9th Cir.1980)).

(76) The purpose of the criminal contempt sentence "is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911). Most contempt sanctions, like most criminal punishments, to some extent punish a prior offense as well as coerce an offender's future obedience.

(77) "A corporation is guilty of criminal contempt when its agents violate a court order with knowledge that the order has been issued." *U.S. v. 22 Rectangular or Cylindrical Finished Devices, More or Less, STER-O-LIZER MD-200...Halogenic Products Co.*, 941 F.Supp. 1086, 1095 (D.Utah,1996); *see United States v. Greyhound Corp.*, 370 F.Supp. 881 (N.D.Ill.), aff'd, 508 F.2d 529 (7th Cir.1974).

(78) "Criminal contempt is a crime in the ordinary sense," *Bloom v. Illinois*, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), and "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 1429-1430, 99 L.Ed.2d 721 (1988). See *In re Bradley*, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 608 (1943) (double jeopardy); *Cooke v. United States*, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers*, 221 U.S. at 444, 31 S.Ct. at 499 (privilege against self-incrimination, right to proof beyond a reasonable doubt).

(79) For "serious" criminal contempts involving imprisonment of more than six months, these protections include the right to jury trial. *Bloom*, 391 U.S., at 199, 88 S.Ct., at 1481, *see also Taylor v. Hayes*, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701-2702, 41 L.Ed.2d 897 (1974).

(80) A fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a "completed act of disobedience," *Gompers*, 221 U.S., at 443, 31

11

10297-14/LAR/LAR/620978_v1

S.Ct., at 498, such that the contemnor cannot avoid or abbreviate the confinement through later compliance.

(81) Defendant Stanley acted in willful, knowing, and repeated violation of the Preliminary Injunction.

(82) A finding of criminal contempt should be entered against Defendants for their contemptuous actions.

(83) Plaintiffs are entitled an Order of Contempt.

DATED: _____

JABURG & WILK, P.C.
ATTORNEYS AT LAW
3200 NORTH CENTRAL AVENUE
SUITE 2000
PHOENIX, ARIZONA 85012