**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| XCENTRIC VENTURES, LLC, and Arizona corporation, d/b/a "RIPOFFREPORT.COM"; ED MAGEDSON, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>WILLIAM "BILL" STANLEY, an individual; et al.,<br><br>    Defendants. | No. CV-07-954-PHX-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CONTEMPT OF DEFENDANT WILLIAM STANLEY (SECOND)** |

On November 11, 2008, Plaintiffs Xcentric Ventures, LLC, and Ed Magedson filed their Motion for Order to Show Cause why Defendant William Stanley should not be held in contempt for failure to comply with both the June 21, 2007, Preliminary Injunction (Dkt. # 33) and the February 19, 2008, Order of Contempt (Dkt. # 176). (Dkt. # 235.) On January 9, 2009, the Court held an order to show cause hearing during which Plaintiffs presented evidence supporting contempt. The Court now issues the following findings of fact and conclusions of law in support of a finding of contempt against Defendant Stanley.

**I.   FINDINGS OF FACT**

(1) Plaintiff Ed Magedson is an Arizona resident and the manager of Plaintiff Xcentric Ventures, LLC, a company that operates a website known as "Ripoff Report" at www.ripoffreport.com. The site allows visitors to post and review disparagements about

companies and individuals. Because the complaints are searchable in various search engines, they can draw significant attention to targeted businesses.

(2) Defendant Stanley does business under the trade name "Reputation Management" and operates numerous websites, including www.complaintrepair.com, www.defamationaction.com, www.defamationremoval.com, www.defamationremover.com, www.defamationrepair.com, www.remove-rip-off-reports.com, www.remove-ripoff-report.com, www.removedefamation.com, www.removenegativelinks.net, www.removeripoffreports.com, www.repprotector.com, www.repsaver.com, and www.shield-reputation.com. Defendant Stanley is a member of the Defamation Action League, an unincorporated association. His place of residence is unknown and he uses aliases "Jim Rickson," "Matt Johnson," and "Maxwell Tarczynski." Stanley has been placed on the Register of Known Spam Operations ("ROKSO") as a professional spam operator who has been terminated by a minimum of three internet service providers for spam offenses.

(3) A Preliminary Injunction and Findings of Fact and Conclusions of Law were entered by this Court on June 21, 2007.[1] (*See* Dkt. ## 32, 33.) The Order applies to all Defendants and "their officers, agents, employees, independent contractors, or other persons acting under the supervision and control or at their request." (Dkt. # 33 at 2.)

(4) Defendant Stanley received the Preliminary Injunction promptly from Plaintiffs' counsel.

(5) Defendant Stanley was required to comply with the language of the Preliminary Injunction.

---

[1] In addition to the Preliminary Injunction, the Court entered an order of contempt against Defendant Stanley on February 19, 2008. (Dkt. # 176.) In their motion for an order to show cause, Plaintiffs state that Defendant Stanley has also violated the order of contempt by failing to send weekly reports to Plaintiffs' counsel detailing his efforts to comply with the order. Despite this assertion and the presentation of one unauthenticated e-mail allegedly from Defendant Stanley, Plaintiffs have failed to produce any evidence upon which the Court could find that Defendant Stanley has violated the order of contempt by failing to send weekly e-mails to Plaintiffs' counsel.

**A.     Use of Material Owned by Customers of Xcentric or Ripoff Report**

(6) The Preliminary Injunction enjoined Defendant Stanley from "[w]illfully using without authorization copyrighted material owned by . . . [a]ny customer of Xcentric or Ripoff Report. (Dkt. # 33 at 5.)

(7) As of December 10, 2008, copyright protected material[2] composed by customers of Xcentric or Ripoff Report appeared on the following websites: www.complaintremover.com, www.complaintremovers.com, www.complaintrepair.com, www.defamationaction.com, www.defamationactionleague.org, www.defamationremoval.com.  As of January 5, 2009, copyrighted material owned by customers of Xcentric or Ripoff Report appeared on the following websites: www.defamationremover.com, www.defamationrepair.com, www.remove-negative-listings.com, www.remove-negativelistings.com, www.remove-rip-off-reports.com, www.remove-ripoff-report.com, www.remove-ripoff-reports.com, www.removedefamation.com, www.removenegativelinks.net, www.removeripoffreports.com, www.repprotector.com, www.repsaver.com, www.repsavior.com, www.reputationsavior.com, and www.shield-reputation.com.  These uses were not authorized by Plaintiffs or its customers.  The websites listed in this paragraph will collectively referred to as "the offending websites."

(8) Each of the offending websites contains the identical contact phone number. Additionally, the content of each website is similar.

---

[2] Copyright protection is available for "original works of authorship fixed in any tangible medium of expression, now or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine."  17 U.S.C. § 102(a).   "Works of authorship include . . . literary works."  *Id.*   Copyright protection does not, however, "extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery."  *Id.* § 102(b).  The United States Supreme Court held that copyright protection only extends to "original" works.  *Feist Pubs., Inc. v. Rural Rel. Serv. Co.*, 499 U.S. 340, 345 (1991).  "Original, as the term is used in copyright, means only that it possesses at least some minimal degree of creativity."  *Id.*  It follows from this authority that copyright protection does extend in some degree to customers' writings posted on Ripoff Reports which were copied verbatim by Defendant Stanley.

(9) The following websites are registered to Defendant Stanley: www.defamationaction.com, www.defamationremoval.com, www.defamationremover.com, www.defamationrepair.com, www.remove-rip-off-reports.com, www.remove-ripoff-report.com, www.removedefamation.com, www.removenegativelinks.net, www.removeripoffreports.com, www.repprotector.com, www.repsaver.com, and www.shield-reputation.com.

(10) The following websites are registered to Andrea Schurz: www.complaintremover.com, www.remove-ripoff-reports.com, and www.repsavior.com. Andrea Schurz is Defendant Stanley's girlfriend and the mother of three of Defendant Stanley's children. The registered address, phone number, fax number, and e-mail address for the websites www.complaintremover.com and www.remove-ripoff-reports.com is the same contact information as recorded on other websites registered to Defendant Stanley. The registered address is the address Defendant Stanley is known to use in Austria.

(11) Lea Schurz is the named registrant of the website www.complaintremovers.com. Schurz is the last name of Defendant Stanley's girlfriend. The registered phone number for this website is linked to other websites registered to Defendant Stanley. The registered e-mail address for this site is linked to the website www.complaintremover.com which is registered to Andrea Schurz.

(12) William Schurz is the registrant of the website www.complaintrepair.com. The registered address, phone number, fax number, and e-mail address for this website is the same as other websites registered to Defendant Stanley.

(13) Maxwell Tarczynski is the registrant of www.defamationactionleague.org. Maxwell Tarczynski is an alias for Defendant Stanley. The registered phone number and e-mail addresses for this website is the same as other websites registered to Defendant Stanley.

(14) Radu Nuna is the registrant of the website www.remove-negative-listings.com and www.remove-negativelistings.com. The registered e-mail addresses for these websites is a known e-mail address for Defendant Stanley.

(15) The registration information for the website www.reputationsavior.com is unknown.

(16) The offending websites are either registered to or under the control of Defendant Stanley. Defendant Stanley is responsible for the content appearing on each of the offending websites.

(17) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by posting or causing to be posted, without authorization, copyrighted material owned by the customers of Xcentric Ventures or Ripoff Report.

**B.     Use of Private Information of Xcentric's Business Partners**

(18) The Preliminary Injunction enjoined Defendant Stanley from "[p]ublicizing online any private information pertaining to the personal residence or financial affairs of . . . [a]ny individual that provides a business or legal service to Xcentric Ventures." (Dkt. # 33 at 6.)

(19) PMGI is a service provider of Xcentric Ventures.

(20) On October 8, 2008, the personal address of the owner of PMGI appeared on the website www.defamationaction.com.

(21) The website www.defamationaction.com is registered to and under the control of Defendant Stanley.

(22) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by publicizing private information pertaining to the personal residence of an individual that provides a business service to Xcentric Ventures.

**C.     Use of the Website www.pmgisucks.com**

(23) The Preliminary Injunction ordered Defendant Stanley to take down the website www.pmgisucks.com so that the domain name would no longer exist. (Dkt. # 33 at 7.)

(24) On or about March 27, 2008, the website www.pmgisucks.com was active and contained pornographic images.

(25) Defendant Stanley willfully and knowingly violated the terms of the Preliminary Injunction by failing to take down the website www.pmgisucks.com.

## II. CONCLUSIONS OF LAW

### A. Persons Bound By the Preliminary Injunction

(26) Federal Rule of Civil Procedure 65(d) provides that: "Every order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

(27) Defendant Stanley received actual notice of the Preliminary Injunction and was therefore bound by the provisions of the Preliminary Injunction.

(28) Defendant Stanley was enjoined from "[w]illfully using without authorization copyrighted material owned by . . . [a]ny customer of Xcentric or Ripoff Report." (Dkt. # 33 at 5.) Defendant Stanley violated this provision by, without authorization, either posting or causing to be posted copyrighted material owned by customers of Xcentric Ventures or Ripoff Report on a variety of websites either registered to or controlled by Defendant Stanley.

(29) Defendant Stanley was enjoined from "[p]ublicizing online any private information pertaining to the personal residence or financial affairs of . . . [a]ny individual that provides a business or legal service to Xcentric Ventures." (Dkt. # 33 at 6.) Defendant Stanley violated this provision by publicizing the residential address of the owner of a business which provides business services to Xcentric Ventures.

(30) Defendant Stanley was affirmatively obligated to take down the website www.pmgisucks.com. (Dkt. # 33 at 7.) Defendant Stanley, to whom this website is registered, violated this provision by failing to permanently take down the website.

### B. Civil Contempt

(31) "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citations omitted).

(32) Defendant Stanley has disobeyed specific and definite orders by failing to take all reasonable steps within his power to comply. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 10 F.3d 693, 695 (9th Cir. 1993). Contempt does not need to be willful and there is no good faith exception to the requirement of obedience to a court order. *Id.*

(33) Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing contempt action for injuries resulting from the contemptuous behavior, or both. *United States v. Mine Workers*, 330 U.S. 258, 303-04 (1947); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

(34) Plaintiffs are entitled to coercive sanctions to require Stanley to comply with the Preliminary Injunction.

(35) Plaintiffs are entitled to compensatory sanctions to compensate them for the injuries suffered as a result of Stanley's contemptuous behavior.

### C. Criminal Contempt

(36) "Criminal contempt is established where there is a clear and definite order of the court, the condemnor knows of the order, and the contemnor willfully disobeys the order." *United States v. Doe*, 125 F.3d 1249, 1254 (9th Cir. 1997) (quoting *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980)).

(37) The purpose of the criminal contempt sentence "is punitive, to vindicate the authority of the court." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911).

(38) "While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that 'only the least possible power adequate to the end proposed should be used in contempt cases.'" *Young v. U.S.* ex rel. *Vuitton et Fils S.A.*, 481 U.S. 787, 801 (1987) (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).

(39) Federal Rule of Criminal Procedure 42 details the procedure for prosecuting criminal contempt. "Any person who commits criminal contempt may be punished for that contempt after prosecution on notice." Fed. R. Crim. P. 42(a). After proper notice, "[t]he court must request that the contempt be prosecuted by an attorney for the government, unless

the interest of justice require the appointment of another attorney." *Id.* Additionally, Rule 42(a) requires a trial and disposition in all cases of criminal contempt. *See* 3A C. Wright, N. King, & S. Klein, *Federal Practice and Procedure* § 709, at 489 (3d ed. 2004) ("Rule 42(a), requiring notice, appointment of a prosecutor, and trial and disposition, applies to all criminal contempt proceedings except those which may be punished summarily [under Rule 42(b)]."). Depending on the nature of the punishment, a jury trial may be required. *See id.* §712, at 505 (explaining when a criminal contempt jury trial is required).

(40) However, the Court declines to commence criminal contempt proceedings against Defendant Stanley because, at this time, it is not the "least possible power adequate to the end proposed," *Young*, 481 U.S. at 801, and because, in light of Defendant Stanley's self-imposed exile, the contempt does not merit the use of the limited resources of the United States government. The remedy Plaintiffs seek may be achieved through civil contempt both to coerce Defendant Stanley's voluntary compliance with the Preliminary Injunction and to compensate them for damages incurred due to his noncompliance. The denial of criminal contempt proceedings at this time is without prejudice to a renewed request upon further application proving recurrence of willful and knowing violation of the Preliminary Injunction of Defendant Stanley.

**IT IS THEREFORE ORDERED** that Plaintiffs submit by **January 23, 2009**, a form order finding Defendant Stanley in civil contempt, with supporting evidence of damages and attorneys' fees. The Court is inclined to grant Plaintiffs' request to transfer registration of the offending websites to Plaintiffs. However, the Court is disinclined to make this transfer permanent, but rather contingent upon the affirmative ability of Defendant Stanley to purge his contempt. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) ("In these circumstances, the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the keys of his prison in his own pocket.") (quotations omitted). Consequently, Plaintiffs are advised to suggest appropriate contingencies within their proposed form of order, the satisfaction of which would allow Defendant Stanley to regain registration and control of the offending websites.

DATED this 16th day of January, 2009.

_____
G. Murray Snow
United States District Judge